## POWELL, ET AL. V. POWELL.

1. When a bill calls for administratrix of an executor to exhibit the accounts of sales remaining in her possession, as were left by her intestate, her assertion that the executor left no such accounts, will not make evidence a copy of a settlement made by him with the proper orphans' court. The setting out of such a settlement is new matter, not responsive to the bill.

2. The settlement set out in the answer could properly be proved as an exhibit, by proof at the hearing, or before the master on a reference, and would probably be *prima facie* evidence for the administrator.

3. When the accounts of an executor were submitted to some of the distributees of the estate, in order for an amicable settlement, and were retained by them for nearly a year, without question, this will bind such distributees so far at least as to cast on them the burthen to surcharge and falsify, but will not bind such distributees as had no connection with the examination.

4. The widow of a deceased person cannot render herself a competent witness in a suit against his personal representative, by conveying her interest in the estate to the other distributees. Her assignment of such interest is, however, sufficient to pass it in a court of equity to the assignees.

5. When the testator left his entire estate to his widow, until her death or future marriage, and the executor continues the management of a plantation, with the lands and slaves of the estate, he is to be considered as acting as her agent, and accountable to her only for the proceeds of the crops, &c. Such proceeds form no part of the assets of the estate, and do not pass by the assignment of the widow of her interest in the estate.

6. When there is an unsettled account between the wife and another party, for transactions when she was a *feme sole*, the admissions of the husband, in a conference with the other party respecting settlements, that nothing was due to the wife, is sufficient to cast the burthen on her of showing the parties were mistaken in the conclusion then had.

7. When an account is taken against the administrator of an executor, interest is not chargeable with interest, unless he is shown to have used the funds, or was guilty of wilful neglect.

8. Compensation to executors and administrators is allowed in our courts, and should be refused only in cases of wilful default, or gross negligence, causing loss to the estate.

Error to the Chancery Court of Lowndes.

THE complainants in this bill are the legatees of D. Powell,

upon whose will letters testamentary were granted to Seymour Powell, and the suit is against M. A. Powell, as his administratrix. Its object is to obtain a discovery of the assets sold by the executor, in his lifetime, and to compel an account and settlement.

In order to a full understanding of the questions determined by the court, the recital of portions of the will and evidence taken in the cause, as well as of certain parts of the bill and answer is necessary.

The will gives to Nancy Powell, the widow of the testator, two slaves, Lucy and Cress, to her and her heirs forever. It then proceeds, "I lend my beloved wife, during her natural life or widowhood, or until my four children, as mentioned below, may arrive to the age of free men and women in order, or marry, all my possession in land, stock of horses, hogs and cows, and other kind whatsoever, household and kitchen furniture, plantation tools, together with the following negroes, viz: Tom, Major, Clarissa, Squire, Solomon, Lucinda, Frank, Nat, Sam and Lewis. Now provided there may be occasion for the sale of any of my property, to satisfy any of my just debts, it is my will and desire, that one or both of negroes Tom and Major be disposed of for that purpose." He then gives to his daughter, Elizabeth Ann, at the time of her coming of the age of free woman, or at the time of her marriage, or otherwise at the death or marriage of his wife, the slaves Clarissa and Squire, to her and her heirs forever, together with the increase of Clarissa—noting the fact that he had previously given a life-estate, or during widowhood, in these slaves to his wife. He then gives Solomon and Lucinda, in the same terms, to his daughter, Mary L. He then gives Frank and Nat in similar terms to his son Thomas A. He then gives Tom and Lewis in similar terms to his son William E. It then proceeds, "It is my will and desire, that the remainder of my estate, as well money and debts, which I may have on hand, or then undisposed of, which I have left to my wife during her lifetime or widowhood, subject however to the bequests hereinbefore mentioned, at the death or marriage of my wife, or otherwise at the time of my youngest son, William E., arriving at the age of manhood, or a freeman, be sold, and the proceeds thereof be

equally divided between my wife, or to her heirs if she should be dead, and my four children as above named."

The bill charges that Drury Powell died in December, 1822, exhibits the will, and asserts that letters testamentary were granted upon it to Seymour Powell, by the orphans' court of Montgomery county, all the legatees named in it being then and yet living.

Nancy Powell, the widow, afterwards married one Wm. Keener, who died before the exhibition of the bill. It also charges that the estate has never been partitioned, or divided among the legatees under the will, and therefore the portion to which Mrs. Keener was entitled did not pass under the marital rights to said William Keener, and that since his death, Mrs. Keener, for a valuable consideration, has conveyed her portion now remaining of the unsettled effects of said testator, to complainants—who are the four children named in the will. This conveyance is exhibited, and bears date in October, 1841. It then alledges that Seymour Powell possessed himself of all the estate of Drury Powell, upon his death, and continued to act as executor, controlling the estate until his death, which occurred in 1834; and that he did not in his lifetime pay over to Mrs. Keener the full portion of the estate to which she was entitled, and without having accounted for his administration.

After asserting the appointment and qualification of the defendant as his administratrix, the bill proceeds to charge, that Seymour Powell caused the slave Tom to be sold, together with many other articles of personal property, and that he made no returns of this sale to the orphans' court, nor did he ever account for the sales of the personal property. It also charges, that this account of sales fell into the hands of the defendant, and prays that she may be compelled to exhibit a copy of the same in her answer.

It afterwards alledges that the widow did not intermarry with Mr. Keener, until the year 1831 or '32, and that the executor received the proceeds of the cotton crops made by the estate, from the year 1822 until 1832, as well as that made in 1822, previous to the death of the testator, but not sold by him. The charge is then made, that upon the intermarriage of Mrs. with Mr. Keener, in 1831 or '32, the executor

sold the other slave, Major, the lands of the estate, and a large quantity of personal property, the proceeds of which ˙were finally collected by him, but never accounted for. It prays that the account sales of this property may be exhibited by by the defendant.

The defendant in his answer, admits the will, probate, &c. &c., as well as the conveyance by Mrs. Keener to the complainants of her interest under the will. She also admits the administration was not closed at the death of Seymour Powell, which occurred in 1844. She asserts she cannot render an account from her own knowledge, or from any books, accounts, or vouchers, kept by her intestate, in his lifetime, of the estate, up to the latter part of the year 1827, from the commencement of his administration, except one document, in the proper hand-writing of the said Seymour. This document, as exhibited, purports to be the copy of a return and settlement made by him to the orphans' court of Montgomery county, to which is appended the bills of the various purchasers, made at the sales of the property of the estate, in the year 1832, after the marriage of Mrs. Powell, the widow, with Mr. Keener. From the memorandum of a different date, it may be doubtful if portions of this property was not sold in 1834. The part of the writing which purports to be a copy of the settlement made with the orphans' court of Montgomery county, in 1827, shows various items of debit and credit, in account with the estate, from which a balance of $81 59, then appeared as due to the executor.

The answer then proceeds to assert that the account up to 1827, exhibited with the answer, corresponds in every particular with the account of the settlement remaining in the Orphans' court of Montgomery county, and denies that she has any other information of the proceedings of her intestate with the estate previous to that time.

It then asserts her intestate had often times advanced money on account of the estate ; that the estate furnished the only means for the support of the widow of Powell and his children, the complainants ; that the respondent believes there were no clear profits derived therefrom at any time ; that the proceeds of the estate were applied from time to time to the support and maintenance of Mrs. Powell, the widow,

and to that of her children, as well as to their education, with the consent and approbation of Mrs. Powell, the widow, she living with it and upon it, and that neither she nor any of the complainants ever expressed any dissatisfaction during the life-time of Seymour Powell, or pretend that any thing was in arrear.

It then proceeds to set out a statement of the sums received from the cotton crep, made from 1827 to 1831 inclusive, amounting to $1586 78 ; also, that the sales under the will, in 1832, amounted to $1994 93.

It is then insisted that the executor, upon the return made by him to the Orphans' court in 1827, paid a large amount of debts and expenses standing against the estate ; and also for the expenses of managing the same, as well as for the support and maintenance of the widow and her children, according to the provisions of the will, and the wish and approbation of the widow, exceeding in amount the sum of two thousand dollars, the vouchers and accounts for which are exhibited. These when examined, appear to be in a very confused condition, consisting of notes signed by Powell as executor, accounts made out against the estate of Drury Powell, but which seem to have been created after his death ; accounts against the widow ; accounts for the tuition of the children ; and accounts arising out of the management of the slaves, land, &c., lent by the will to Mrs. Powell, during her life or widowhood.

It then asserts that a large portion of the notes taken for the property sold in 1832, remained unpaid at the death of Seymour Powell, which the defendant at all times was ready to deliver the successor in the administration, but that no one was appointed for several years. In 1837 these assets, amounting to $1035, excluding interest, as appears from the receipt exhibited, were paid over to the administrator *de bonis non.*

It next asserts that Seymour Powell was entitled to the sum of $292 for commissions upon the estate, which the respondent claims should be allowed.

It then admits, that upon the examination of all these vouchers and accounts, $38 are due to the complainants, which

the respondent asserts she has always been ready to pay, and has repeatedly offered to pay.

It asserts that in 1838 she was requested by Mrs. Keener, for herself and the complainants, through Thomas A. Powell, one of them, to furnish a statement of the matters in the hands of Seymour Powell at his death and unsettled, for their examination. In compliance with this request the respondent's attorney drew off a statement of the accounts, corresponding with all the various vouchers exhibited, which were delivered to Thomas A. Powell, and which the respondent asserts her belief was seen and inspected by Mrs. Keener, and such of the complainants as chose to see them, and that she was not afterwards informed by either of them of any error therein; but that about twelve months afterwards Mrs. Keener and some of the complainants appeared to be dissatisfied about the business, and desired to see all the vouchers as they remained in the possession of Seymour Powell at the time of his death. The vouchers were then [exhibited to Mrs. Keener, Thomas A. Powell, and the complainant Lee, who examined them thoroughly and deliberately. None of these persons then pretended to doubt or dispute any item either in the accounts of 1827, or those arising subsequently, except one of some $30, which was then withdrawn, and which has not since been insisted on. Mrs. Keener, notwithstanding this scrutiny, was dissatisfied, and insisted that Seymour Powell had admitted in conversation with her, he had $1200 in cash in his hands belonging to Drury Powell's estate, and she claimed this sum with interest.

It also asserts that William Keener, the subsequent husband of Mrs. Powell, in his life-time, and during the marriage, admitted that Seymour Powell had accounted with him for and paid over all he owed the estate of Drury Powell.

Testimony was taken by both the complainants and defendants, and such as enters into, or is connected with the opinion of the court, will be stated.

Mrs. Keener, the widow of Drury Powell, was examined as a witness for the complainants, but her deposition suppressed upon the ground she was incompetent to testify.

William S. Keener, a witness for the defendant, deposed
114

that William Keener was the guardian for the children of Mrs. Keener by Drury Powell, both before and at the death of said Keener. In a conversation between Seymour Powell and William Keener, in relation to the amount due from Powell as executor of Drury Powell, to said Keener in right of his wife, and also as guardian of said children in the spring or summer of 1833, Powell stated he had made collections of all the money due the estate of Drury Powell, with the exception of about $1200, which was due from the witness and William Keener, except $30 or $40 from one Staggers. He further stated, the money he had collected was paid out, and went on to state how it had been applied: that he had paid all the debts of the estate except a blacksmith's account for a few dollars ; that he was ready to settle with Keener as the guardian of the heirs of Drury Powell, provided Keener would receive the notes as cash, and would, for the purpose of settlement, cash the note on Staggers. Keener said that what he had in his hands as guardian, was more than he wanted, and he wanted nothing more. Powell then said to the witness that he would not call on him for payment until the children came af age. Keener made no claim against Powell on account of his wife, or as guardian for monies in his hands. The notes were afterwards paid by this witness to the succeeding administrator. He also deposed he had heard Mrs. Keener say that by the care of Seymour Powell the estate had been greatly benefitted, and that she was fully satisfied. On cross-examination this witness said, no settlement was made between Keener and Powell.

Hudson Powell, another witness for the defendant, states that the widow and children of Drury Powell were maintained principally from the farm, and on the property left by Drury Powell, and the children educated out of the proceeds. He knows of no other resources sufficient to maintain the widow and children. They lived on the farm, and used the corn, stock, and other productions of it. A portion of this witness' deposition was suppressed, it giving the declarations of Seymour Powell, as to expenditures on account of the estate.

Nathan Cook, also a witness for the defendant, proved the assertions of the answer with respect to furnishing a state-

ment of the account exhibited to Thomas A. Powell, one of the complainants, in 1838, and the attempt at a settlement in 1839, as set out in the answer ; that at this attempt to settle, Mrs. Keener produced the written direction of Russell, the administrator *de bonis non*, to settle with her ; that a minute examination was made of each voucher, and the correctness of none of them denied. No settlement was made on account of the claim set up by Mrs. Keener to receive $1200, with interest. This witness also proves, that he told the persons present at this settlement, that the paper exhibited as in the hand-writing of Seymour Powell, was compared by him with the one on file in the orphans' court of Montgomery, and that it appeared then to have been allowed by the court at Montgomery ; but no office copy was produced at the hearing, so far as the record discloses.

Appended to the record are transcripts of the inventory returned by Seymour Powell as executor, to the orphans court of Montgomery, as well as returns made by him of the sales of the personal estate in 1822 and 1823, as well as the account of the sales of cotton crops, from 1823 to 1829, inclusive.

At the hearing, upon the bill, answers, and proof, the chancellor suppressed the deposition of Mrs. Keener, and part of that of Hudson Powell, for the reasons before stated, and directed a reference to the master, to take and state an account of the administration of Seymour Powell, as executor of the said estate, and report what balance, if any, is due from him to the complainants, and each of them. He also directed the register to receive the two papers set out as exhibits to the answer, as presumptive evidence of their fairness ; and also to receive as evidence all the depositions not suppressed, the admissions of the answer, and such other legal proof as should be adduced by the parties, to be taken down in writing, if any such should be offered. Also, he was directed to make all just and proper allowances for necessary charges and expenses.

The register stated an account, showing a balance against the defendant, of $52 97, with interest, from the death of S. Powell, for eleven years, making a total of $99 50.

The complainant excepted to the report, for the following reasons, viz :

1. Because the register, in stating the accounts, did not ascertain the annual balances in favor of either party, and charge interest on the balances so ascertained.

2. Because he did charge interest annually on the sales of cotton made in the years '27, '28, '29, '30, and '31.

3. Because he did not charge interest on the sales of the personal property, made in 1832.

4. Because he allows the sum of $3,159, as paid out by the executor, without any evidence of payment.

5. Because commissions were allowed upon the whole assets of the estate, and the executor was entitled to none he being in default in not making regular returns.

Exceptions were also filed by the defendant, but the chancellor, on appeal, sustained the report of the master, disallowing them on both sides, and rendered a final decree upon the report of the master, directing the parties to pay their own costs.

The errors assigned in this court, open the questions raised by the suppression of Mrs. Keener's testimony ; the correctness of the directions to the master, in relation to the evidence arising out of the exhibits to the defendant's answer, and the omission to give interest upon the annual balances.

THOS. WILLIAMS, for the plaintiffs in error, made the following points:

1. The deposition of Mrs. Keener was improperly suppressed. She had the right to convey her interest under the will as she pleased, and afterwards had no interest in the suit.

2. The direction to the master assumes the exhibits to the answer are called for by the bill ; but this is a mistake. The bill requires the exhibition of particular accounts of sales, but nothing further.

3. If, under any circumstances, the account of the settlement with the orphans' court can be evidence, it is not so, because not certified or proved.

4. The papers exhibited as showing payments subsequent to 1827, were not entitled to be considered in any manner as

evidence, unless proved before the master, and not then unless they were proper charges against the estate.

5. The master should have charged the executor with interest on the yearly balances, and should not have allowed him commissions.

N. Cook, contra, insisted, the merits of this case were decided when it was here at a previous term—Powell v. Powell, 7 Ala. Rep. 582—except the question of interest. As to that, he insisted an executor is not chargeable, unless he uses the money.

GOLDTHWAITE, J.—1. When this suit was here at a former term, the only point decided was, that the writ of error was prematurely taken. It is true, we expressed an opinion, that the accounts exhibited with the answer were responsive to the bill, but in that matter, the Judge delivering the opinion, was evidently mistaken in his examination of the transcript. There is nothing in the former consideration of the cause, to conclude us now from its full examination.

It will be seen, if the statements of the bill are looked to, that the complainants call for the exhibition of the accounts of sales, remaining in the possession of the defendant; and not for her to set out such accounts of the estate as were left by her intestate. She asserts her inability to comply with the call as made by the bill, but sets out a document in the hand-writing of her intestate, which purports to be the copy of the settlement of the estate made by him in 1822, with the orphans' court of Montgomery county. This certainly is not responsive matter, which will make it evidence, without further proof on behalf of the defendant. Possibly the complainants would be entitled to use it, but if they should, the whole, as an admission, must be taken. It will be borne in mind, that although it purports to be a copy of an office document, yet it is neither proved as a sworn copy, or verified by the certificate of the proper officer. Without further proof of authenticity, it was clearly inadmissible as evidence for the defendant.

2. If however, it was important to show a settlement with the orphans' court, of the estate, up to the year 1827, it might

have been established as an exhibit by proof at the hearing
or on the account before the master. Its effect as evidence
would then have been a proper subject for consideration, and
we incline to the opinion that it would be *prima facie* evi-
dence for the administrator, as it is scarcely practicable for
vouchers or proofs, to be presented after the lapse of so many
years. Several of our statutes seem to treat of the power of
the orphans' court over the accounts of executors, as a mat-
ter of voluntary jurisdiction, and it is said the ecclesiastical
courts of England *ex officio*, require inventories to be exhibit-
ed. [Philips v. Bignel, 1 Phil. 239.]

It is not important, however, now to decide the effect, as
evidence, of a voluntary settlement, or statement of an ac-
count in the orphans court, as the point is not directly present-
ed, and as it may hereafter be examined when this matter is
again before the chancellor.

3. The other accounts exhibited with the answer, under
the circumstances of the case, were not evidence of a stated
account against all the complainants, and consequently could
not be the basis upon which to state the account in the mas-
ter's office. It is true, if the complainants, Thomas A. Pow-
ell, and Lee, and Mrs. Keener, were the sole parties, the ac-
count stated to them, or rather to Powell and Mrs. Keener,
in 1838, which it seems from the testimony of Mr. Cook, was
retained for nearly a year, without calling it in question,
would bind them, at least so far, so as to cast on them the
burthen to surcharge and falsify it ; yet as to the other com-
plainants, no attempt was made to connect them with the
transaction, or to show the account was procured and stated
with their consent. The same remarks will apply to the
presumptions which might legitimately arise from the exam-
ination, and implied admission of the vouchers submitted for
their inspection in 1839, as asserted by the answer, and prov-
ed by Mr. Cook. [Langdon v. Roane, 6 Ala. Rep. 518.]
The direction to the master to consider this general account,
and the vouchers, as *prima facie* correct, was to some extent
erroneous, and their proper influence on the account before
the master, will be hereafter adverted to.

4. The deposition of Mrs. Keener was properly suppressed,
as she is clearly an incompetent witness, to increase or estab-

lish by her testimony, the quantity of interest assigned by her to the complainants. She is the assignor of an interest, and if competent to establish it, there is no case in which a party might not establish his own demand, under pretence of assignment to another. We apprehend no case can be found where a witness has been allowed to first assign a disputed *chose in action*, and afterwards to establish its value by his own oath. The principles settled in Mason v. Maury, 8 Porter, 211, and Chapman v. Pruitt, Ala. Rep. , are direct authorities on this point of the case. But although her incompetency as a witness is clear, there is no valid objection to giving effect to the aseignment, when the interest is sufficiently established by other proof. It is true, at law the interest in a *chose in action* cannot be so assigned as to enable the assignee to sue in his own name, yet a different rule obtains in equity ; there he is looked upon as the true owner, and as such, in a proper case for equity jurisdiction, is entitled to sue.

5. As the decree will be reversed, in consequence of the erroneous directions to the master, in relation to the allowance of the accouts and vouchers exhibited with the answers, as evidence for the defendant, it becomes proper to state the principles upon which the account should be stated by him hereafter.

By reference to the several clauses of the will, it will be perceived no property whatever is left to the children of the testator, to come to their possession previous to the time when they severally should come to the age of freedom, or should marry, or until their mother should marry again, or die. The whole of the personal and real estate, until the death or marriage of the widow, was loaned to her, without further reservation than to allow each child, as it married or came to the age of freedom, to have two of the slaves thus loaned. The property of the estate which the executor was permitted to sell under the will, consisted chiefly of two slaves, and in point of fact, one of these was not sold until the marriage of the widow, in 1832. The presumption is therefore irresistible, that the testator expected his widow to maintain herself and children by the use of the slaves, land and stock, loaned to her under these circumstances. She was entitled to the

immediate use of the entire estate, except the two slaves, and such other effects as were not included in the loan, and as a consequence the proceeds of the labor of the slaves, upon the land, was as much belonging to her as any property held absolutely. It is true, the executor seems to have managed the farm in that character, but every thing was in the possession and use of the widow, but with reference to all his acts in this connection, he must be considered as her agent, and accountable to her only for the proceeds of the crops, which indeed formed no part of the assets of the estate, and which do not pass to the complainants by the transfer executed by Mrs. Keener at a subsequent day.

6. The assets of the estate derived from the sale of the slave Tom, and other matters sold soon after the testator's death, as well as from all other sources, made the fund from which the debts of the estate were to be paid, and the residue, if there was any, as a part of the estate which, under the will, became subject to distribution after the marriage of the widow with Mr. Keener, in 1832. With respect to those assets, there can be no question of the right of the complainants to have an account. The next subject matter of the account is the sale of the property made in 1832. It appears that this sale produced something near $2000. And it is the disposition of the proceeds of this sale, which, in all probability caused the whole misunderstanding, out of which this suit has originated. This entire sum was received by the executor in notes, and it is quite likely the expenses of the family, with the education of the children, had exceeded the sums received for the sale of the produce of the farm, by something near the distributive share of Mrs. Keener in the estate. Instead of stating the accounts and settling them in the ordinary way in court, the executor conferred with Mr. Keener, then representing the widow, and all the children, with regard to a settlement. According to the evidence of William S. Keener, it was then admitted by the executor, that he had $1200 in notes, which was distributable to the children, and Mr. Keener was satisfied nothing was coming to him in right of his wife. No actual settlement took place at that time, but this admission, so far as the interest of Mrs. Keener is concerned, is certainly sufficient to cast on her the

burthen of showing that the parties were mistaken in their conclusion. Afterwards, something more than $1000 of the notes remaining in specie, at the death of the executor was paid over by the defendant, his administratrix, to the succeeding representative of the testator.

In this view of the case, as it seems to be made from the proofs in the cause. it is evident the account to be taken is somewhat complicated, and without pretending to adjust it finally, we think it will be proper to direct the master—

I. To take an account of all the assets of the estate, reduced to money by the executor, previous to the sales in 1832.

II. To add to the sum thus ascertained the amount of the sales in 1832, deducting therefrom the amount of the notes paid over to the administrator *de bonis non* by the defendant.

III. To state an account of all the debts of the testator, paid by his executor, of all the expenses of administration, commissions, &c. and to deduct the amount thus ascertained from that produced by the assets as before indicated. The balance thus ascertained will form the distributable fund which is to be divided into five parts.

IV. Another account will then be stated between the executor, as the agent of the widow, in which he will be charged with the proceeds of the cotton, &c. received since 1822, to which will be added one of the distributive shares previously ascertained.

V. He will then be credited with all the vouchers and items contained in the general account exhibited in the answer, which shall not be found proper charges against the estate of the testator, unless such accounts and vouchers shall be surcharged and falsified by the complainants representing Mrs. Keener.

VI. If the balance of this account is found against Mrs. Keener, it must be deducted from her distributive share of the estate, and if there is a remainder, that will be added to the other four distributive shares of the complainants. If the sums to the debit of Mrs. Keener, exceed the sums to her credit, no consequences will flow from this account, beyond the extinguishment of her distributive share.

7. In regard to interest, our statute merely recognizes the general principle of equity, that an executor using the funds of the estate, is chargeable with interest, but in general, when no use is made of them, he is not so chargeable, unless guilty of fraud or laches. [Stewart v. Blaney, 2 Ridg. 204; Dawson v. Massey, 1 B. & B. 231.] It is impossible for the defendant to discharge her intestate by the statutory oath, and as wilful negligence cannot be imputed, but must be shown, no interest is proper except upon the final balance. See case last cited.

8. With us, the allowance of compensation to executors and administrators, to a reasonable extent, is warranted by constant practice, and it ought not to be refused, except in cases of wilful default or gross negligence, by which loss to the estate has been the consequence. Nothing of that kind is made to appear in this case, and therefore commissions were properly allowed by the master.

We have thus ascertained the error of the decree as rendered, and the principles which we suppose should govern the future accounts, but in reversing the decree, although we give costs against the defendant in this court, we allow her to charge it against the estate of her intestate's testator.

Decree reversed and remanded.