CRAIG & WIFE vs. McGEHEE & ARMSTRONG.

1. The inventory returned to the court by an administrator is *prima facie* evidence against him, and, in the absence of other proof, is sufficient to charge him; but it is competent for him to show errors or mistakes in it, in order to relieve himself *pro tanto* from the charge.

2. Where on the final settlement of an estate, it is shown that a slave included in the inventory was purchased by the administratrix after the death of her intestate, and paid for with $375 of her individual funds, and $62.50 of the funds of the estate, and that in the accounts rendered she had debited herself with the latter amount and interest thereon, it is not error in the Orphans' Court to refuse to regard said slave as assets of the estate, or to charge the administratrix with its value.

3. Where an administratrix, duly authorized by the court to keep together the personal estate of her intestate for the term of ten years, unites her own labor, and that of a slave, belonging to her, with the labor of the slaves of the estate,—charges herself with the entire proceeds of the crops,—and, by her prudence and diligence, so manages the trust as to advance the interest of the beneficiaries,—she is entitled, on final settlement, to a fair compensation for the services of herself and slave.

4. An administratrix, who has managed the estate with prudence and in good faith, and who has been guilty of no default in settling, when required to do so, does not forfeit her right to compensation, by her omission to make *annual* returns.

5. It is error to decree a sale of the lands of a decedent on the petition of the personal representative, without the previous appointment of a guardian *ad litem* for the infant heirs.

Error to the Orphans' Court of Dallas County. Tried before the Hon. A. J. Saffold, Judge.

Evans, for the plaintiffs in error:

1. The administrators should, under the circumstances, stated in the bill of exceptions, have charged the administrators with the value of the slave Mary. The inventory is *prima facie* evidence to charge them. Steele v. Knox, 10 Ala. 609.

The administrators, neither by virtue of their general authority as administrators, nor under the act of 1835, have any right to place their slaves on the plantation and charge

6

the estate with the hire of such slaves. The act referred to, confers on them, no authority to hire slaves, much less to charge the estate for the hire of their own slaves, thus placing the *interest* of the administrators in direct conflict with their *duty*. Willis' adm'rs v. Willis' heirs, 9 Ala. 333.

3. Under no circumstances, could the amount allowed, exceed the *actual benefit* derived by the estate from the services of the slaves, but this principle in the court below, is altogether disregarded, and hire allowed without any proof. Sumner, adm'r v. Williams, 8 Mass. Rep's. 199; Savage v. Benham, 11 Ala. 49; Harris v. Martin, 9 Ala. 895.

4. The allowance for land rent is even more objectionable. The administrators will not be permitted to buy lands with the assets of the estate, and charge the estate with rent. The objections to this item are not removed by the statement in the bill of exceptions, that the allowance is in part, for compensation to the administrator for services. This the law presumes was considered and allowed on the annual settlements, and if not, it is improper so to blend several items of account: as an allowance to administrators it is exhorbitant, and if (as the bill of exceptions shews was the case) any part of it is for the rent, it is illegal.

5. The record shews that some of the distributees are minors, and it is erroneous to pass on their rights without the protection of a *guardian ad litem*. Taylor v. Reese, 4 Ala. 121.

6. An administrator who is authorized to reserve property from sale for ten years, &c., is required to make annual settlements and if he fails to do so, he is not allowed compensation for services. Clay's Dig. p. 198, § 31–32–33; Benson v. Bruce, 4 Dess. Rep. 463; Wright v. Wright. 2 McCord's Ch. Rep. 8; Jenkins v. Fickling, 4 Dess. 369; Frazier v. Vant, 1 Hill's Ch. Rep. 210.

HUNTER & BIRD, for the defendants:

1. The inventory is only *prima facie* evidence against the administrators. 2 Greenl. on Ev. 277, § 347; 2 Williams on Ex'rs, 648; Brazil v. Brazil, 9 A. R. 491; Steele v. Knox, 10 A. R. 608. The proof showed that Mrs. McGee, (administratrix) after the death of her husband, purchased and paid for the slave Mary, with her own money, thus fully rebutting the

*prima facie* intendment of the inventory, and showing that the insertion of this slave's name was by accident or mistake.

2. Mrs. McGee is charged in the account current, with the crops which this slave of her's assisted in making, by working on the plantation in common with the slaves of the estate. To this extent the labor of her slave was made to increase the estate and funds with which she was charged; some allowance therefore, for the labor of this slave was certainly proper.

3. The allowance of six hundred dollars to Mrs. McGee, for the whole time she acted as administratrix, considering the labor and extraordinary services performed by her, was certainly very low. She was acting about twelve years, and the allowance of six hundred dollars, was for the whole time, being about $50 a year, without any interest. Besides, this $600, also included the rent of her land. No question is made by the bill of exceptions as to the propriety of Mrs. McGee having used funds of the estate for the purchase of the land; the administrators in their account current, being charged with the money so used, and interest thereon. The amount of compensation is to be regulated by the circumstances of each case. Phillips v. Thompson, 9 Porter 664. It will be observed that there was in fact, no renting or hiring, although it is so called in the bill of exceptions. The produce of the administratrix's land, and of the labor of her slave, had innocently become intermixed with the estate's funds, and she had charged herself with her own money—and all the court did, was to seperate her own funds, with which she was charged, from the real fund, belonging to the estate. This could as well be done by charging her with the whole amount, and then crediting her with what was her own, as by merely charging her in the first instance, with the actual amount as belonging to the estate. It is a mere difference of methods, the result being precisely the same by each process. Powell v. Powell, 10 Ala.

4. As to the objection that no guardian, *ad litem*, was appointed, it is contended that it does not appear that there were any infants; on the contrary, we must intend from the record, that all the parties were of age. This objection for want of proper parties, made for the first time in this court, is of course, not favored; all legal intendments, are to be made in favor of

the decrees, and the matter alleged as error, must clearly and affirmatively appear. These rules all apply with full force, here, and even if it were doubtful whether there were not infants, would be sufficient to sustain the decrees.

CHILTON, J.—On the 18th September 1835, the defendants in error, applied for, and obtained letters of administration upon the estate of Joseph McGehee, late of Dallas county, deceased. The letters were granted by the Judge of the Orphans' Court of Dallas county, under the first section of the Act of 1835, authorizing the personal estate of the intestate, to be kept together, and exempt from sale, for ten years, and bond was executed accordingly by said representatives. Dig. 198, § 30.

In December 1835, James H. Armstrong, one of the representatives aforesaid, returned to the Orphan's Court of Dallas, an inventory of said estate, duly verified by his oath, and which embraced a certain negro girl, named Mary, who was by the appraisers estimated to be worth $450.

In May 1836, an annual settlement was made by said Armstrong with the court, and no further proceeding appears of record in the matter of said estate, until the January Term, 1846, when an order was granted, to sell all the personal estate, and a petition was filed to sell 80 acres of land, for the purpose of making more equitable distribution among the heirs.

Upon the final settlement, which took place in May 1847, the defendants in error were permitted to strike from the inventory, the name of the negro girl, Mary. The evidence adduced in support of the motion to amend the inventory, by striking out the name of said slave, was a bill of sale for her, from one D. G. Brandon to Elizabeth McGehee, the administratrix, and that Mrs. McGehee claimed the girl under her purchase, after said appraisement and inventory were returned to the Orphans' Court. It was also shown that she did buy and pay for said negro girl as set forth in the bill of sale, paying of her own funds the sum of $375,00, and of the money belonging to the estate of her intestate, the sum of $62.50, with which last named sum she was charged in the settlement, together with interest from the time of investment. The $375

was raised by said Elizabeth, from the sale of her interest in her father's estate, which interest had not been reduced into possession by the said Joseph McGehee, in his life time. The purchase was made some ten months after the death of the intestate. The Orphans' Court, under these facts, refused to charge the administrators with the price of the slave, or to consider, as assets in their hands, the $375, used in her purchase, but allowed the administrators $300 for the reasonable hire of said girl, while she labored for the benefit of the estate.

1. It is insisted on the part of the plaintiffs in error, that under the circumstances shown in evidence, the court should have charged the administrators with the value of Mary: that the inventory is *prima facie* evidence of the said slave being a portion of the assets of said estate.

There can be no question that the inventory sworn to by the administrator, is sufficient, in the absence of proof, showing a mistake, to charge the party exhibiting it, with the property so returned, as assets of the estate. In Steele v. Knox, 10 Ala. Rep. 615, it is said, " the inventory of the estate, which the personal representative is required to make, would certainly be evidence against him in the absence of all other proof of the value of the property." See also, Brazeal's adm'r v. Brazeal's distributees, 9 Ala. Rep. 461. This position is not gainsayed by the defendant's counsel, but they insist that this *prima facie* intendment is sufficiently rebutted by the proof shown in the record.

We think the proof set out in the bill of exceptions sufficiently shows that the girl, Mary, was improperly returned in the inventory. The interest of Mrs. McGehee in the estate of her deceased father, which her husband had never reduced to possession, was, after his death, her individual property, and she was not chargeable with the sum for which she sold it, as assets of the estate. Terrell, et al. v. Greene, et al. 11 Ala. Rep. 207; Johnson, adm'r v. Wren, 3 Stew. Rep. 172; Mayfield v. Clifton, ib. 375. True, the sum of sixty-two 50-100 dollars of the money belonging to the estate, was advanced in the purchase of the said girl, and the rule is well settled, that a trustee, shall not be allowed to profit by speculating on the trust fund, and if any profit accrues, the same belongs, at

his election, to the *cestui que trust;* this sum, however, with interest from the time of such investment, is charged to the administrators, and no question was raised in the court below as to any supposed profits which accrued upon the investment. The questions there made, and which are here presented for our revision, are, should the administrators be charged with the value of the slave, and with the $375 paid for her? There is no pretence that the administratrix was guilty of any fraud, or bad faith, in making the investment, and as the $375 belonged to her, the court very properly, in our judgment, refused to charge her with the value of the slave, Mary, or to regard her as assets of the estate. There was then no error in allowing the mistake in the inventory to be corrected on the final settlement.

2. Did the court err in allowing hire for the slave Mary? It is shown she labored upon the premises where the farming was carried on some eight or ten years. The crops, which are the joint product of the labor of the administratrix and said girl and two slaves belonging to the estate, are charged to the account of the administrators in the final settlement.— Being charged with the produce of the slave's labor, it is certainly just that she should be allowed a reasonable compensation for her service, unless there is some rigid rule of law which forbids it. The act of 1835, which authorizes the Judges of the several County Courts, upon good cause shown, to permit the executor or administrator to keep the personal estate of the decedent together for any term not exceeding ten years, contemplates that the personal representative should manage the property so as to make it most available to the estate. He is required to keep, and annually to return an account of the manner in which the estate has been managed, the crops made, the expenses incurred, and the disposition of all monies received from the estate. And by the act of 1839, the administrator or executor is authorized to retain the real estate in cases where he keeps the personal property together for ten years, and to cultivate such real estate, &c. See Dig. 198, §§ 30, 31—page 199, § 37. To carry out the object of the Legislature, it is manifest, a reasonable discretion must be vested in the personal representative, in order to render effectual the powers confided to him. It may become one of the

Craig & Wife v. McGehee & Armstrong.

last importance, in the varied operations of agriculture, for the administrator to incur expense in employing assistance to pitch, cultivate or garner the crops, to purchase implements of husbandry and the like, or to rent land so as to render the labor of the hands most profitable. Were such powers denied him, it would often happen that the cultivation of the real estate could not be successfully carried on, and a loss instead of a profit might result to the estate. It must be made to appear, however, that the acts of the representative, involving the exercise of such power, were for the benefit of the estate, and not for the purpose of profit to themselves.

The case at bar furnishes, we think, a fit illustration of the policy of the Legislature in the enactment of the statute above referred to, and of the powers which may properly be exercised by the administrator. The decedent left a small estate, and a wife and eight daughters, who must support upon it. The estate, if sold, would doubtless have been wholly inadequate to their maintenance, and the widow is permitted to keep it together. The estate owning only a negro man and woman, the administratrix, by the use of a small part of the means of the estate, coupled with what she possessed individually, purchased a small tract of land and a negro slave, charging herself, however, with the funds of the estate so invested, and interest from the time of such investment. With these small means, by the personal supervision and labor of the widow, (for the proof shows she worked in the cotton-field with the hands daily, during the cotton season, for eleven years,) she is not only enabled to support her family, but produces cotton crops, the net sales of which, with interest, amount to some $5,000, with all of which she is charged.— Besides this, the increase of the female slave, in the mean time, adds to the value of the estate.

This result of the management of the estate vindicates the wisdom of the enactment, and shows too that the administratrix has used extraordinary efforts to render the assets available. No part of the record shows that she was at any time wanting in good faith, in the discharge of the trust committed to her. Her own personal services, the labor of her slave and the rent of the land, all go to swell the assets of the estate, which are charged to her; and having acted in good faith, in

thus commingling her own with the assets of the estate, we think the court acted very correctly in making her a reason-able allowance for the hire of her slave and her own services. The rule as to compensation is very correctly, we think, laid down in the case of Harris v. Martin, 9 Ala. Rep. 900 : If such services were necessarily and *bona fide* rendered, or were re-quired by the exigencies of the estate to be rendered, and were for its benefit, the court should make such an allowance as, under all the circumstances, would be reasonable and just. The court, in such cases, will nevertheless closely scrutinize the acts of the trustees, to see that their duties, if brought in conflict with their interest, have been strictly and in good faith performed.  See, also, Savage v. Benham, adm'r., 11 Ala. 49.

We think the objection, that it does not affirmatively appear from the record in this case, that the services of the slave as well as of the administratrix were required by the exigen-cies, and did not, after the compensation was deducted, redound to the benefit of the estate, is not supported by the record. It is clearly inferrable from the proof, that laying out of view the rent of the land, for which nothing seems to have been allowed, the compensation is but a very moderate allowance, and that the interest of the distributees has been advanced by the employment of the labor for which the allowance was made.

3. Does the failure of the administratrix to make annual returns deprive her of the right to compensation ?  The deci-sions to which we have been referred, from South Carolina, do indeed hold the affirmative of this proposition; but it will be found that they rest upon a statute of that State, passed in 1789, by which commissions are to be disallowed when an-nual returns have not been made—3 Eq. Rep. 78.  Our stat-ute is merely directory, and although it would be entirely proper to refuse compensation in cases where the administra-tor refuses to account, or stands out in contempt of the autho-rity of the court, as in the case of Hall v. The Heirs of Wilson, 14 Ala. Rep. 295, yet where the party is guilty of no default in settling when required, and has exercised that diligence in respect to the proper management of the estate which pru-dence and good faith demand, he should be allowed a just compensation.  In Bryant v. Craig, 12 Ala. Rep. 354, which

was an attempt to charge a guardian with compound interest, because he had failed to make annual returns, it was held, that the mere omission of the guardian to make annual settlements was not evidence of fraud, so as to charge him with compound interest. The statute requires guardians as well as administrators, under the act of 1835, to render annual accounts. Dig. 270, § 15. Compensation should only be refused in cases of wilful default, or gross negligence, causing loss to the estate. Powell v. Powell, 10 Ala. Rep. 900.

4. It however appears from the petition filed by the representatives, for leave to sell the real estate, in said Orphans' Court at the January Term 1846, that two of the children of the intestate, viz, Margaret and Amanda, were infants under the age of 21 years. Application for final settlement was made in January 1847, but the settlement was postponed until the May following. By the third section of the act of 1843, (Dig. 229, § 43,) the administrator is required to file with his vouchers, &c. for final or annual settlement, a statement under oath, containing a list of the heirs and legatees of the estate, specifying which are minors, &c., so that the Orphans' Court may be able to appoint guardians *ad litem* for the infants, and make the proper decree of distribution. This the administrators failed to do, and no guardian *ad litem* was appointed for either of said minors. The record, we think, sufficiently shows that two of the distributees are infants, and the statute requires that they should have guardians *ad litem* to represent them.— Taylor & Wife v. Reese, adm'r., 4 Ala. Rep. 121. We are compelled, therefore, though we confess reluctantly, to reverse the decree and remand the cause. See Parks v. Stonum, 8 Ala. Rep. 755; Roberts v. Stanton, 2 Munf. 129.

Reversed and remanded.