## LIGHTFOOT ET AL. vs. LIGHTFOOT'S EXECUTOR.

[MARSHALLING OF ASSETS BETWEEN HEIR AND LEGATEE, ON BILL FILED BY
EXECUTOR FOR SETTLEMENT OF ESTATE IN EQUITY.]

1. *English doctrine.*—In England, though the personal estate is the primary
fund for the payment of debts, yet the testator himself, by express direction
or plain implication, might devote his realty to that object instead of his
personalty; and whenever debts are thus chargeable on land, while the per-
sonalty is given either pecuniarily or specifically, courts of equity, acting
on the presumed intention of the testator, will so marshall the assets as to
exonerate the personalty and throw the debts on the realty.

2. *Descended lands liable for debts in ease of what legacies.*—Descended lands are
liable for the excess of debts, after the provision made by the testator is
exhausted, before general pecuniary legacies, or other specific legacies; and
a gift of all the property of a specified kind which the testator possesses,
when not given as a residuary bequest, is for this purpose considered specific.

3. *Under statutes of this State.*—In this State, although the personalty is the pri-
mary fund for the payment of debts, yet the real estate is also bound for
them, irrespective of their character, to the same extent that recognizances
and debts by specialty bound real assets in England; and hence, with us,
descended lands are liable for the excess of debts, in exoneration of a legacy
of " all the negroes not before bequeathed."

APPEAL from the Chancery Court of Madison.

Heard before the Hon. E. D. TOWNES.

THIS bill was filed by John F. Wyche, as executor of the
last will and testament of Clackston Lightfoot, deceased,
against the heirs-at-law and legatees of said decedent; ask-
ing the direction of the court in the settlement and distribu-
tion of his estate. The bill alleges, that said testator died
in October, 1846, having first made and published his last
will and testament in writing, dated November 29, 1842,
which was duly admitted to probate after his death, and which,
after making several specific bequests and devises, and direct-
ing his executor to sell a certain tract of land, two negroes,
crop of cotton and corn, and all stock not bequeathed, and
pay his debts out of the proceeds of sale,—contained a bequest
in these words: " All the negroes not before bequeathed, and
what surplus of money may be left after paying my debts, I
will, give, and bequeath to the children of my brother Harri-

son Lightfoot, to be equally divided among them, and given off to them as they attain the age of twenty-one years, or when they marry." It is further alleged, that said testator, after the execution of his said will, acquired another tract of land and several slaves, as to which he died intestate; that these have been sold by the executor, under an order of the Probate Court, for the purpose of distribution, and the proceeds of sale are now in his hands; that all the specific legacies have been paid and delivered, and refunding bonds taken from the legatees, but the slaves bequeathed to the children of Harrison Lightfoot are still in the executor's possession; that the fund appropriated by the testator to the payment of his debts has been exhausted, leaving debts to the amount of $2,000 still unpaid, and to pay these resort must be had, under the direction of the court, either to said descended lands or to said legacy to the children of Harrison Lightfoot.

The heirs-at-law demurred to the bill for want of equity, but their demurrer was overruled. During the progress of the suit, an order of reference was made of the matters of account; and the register's report thereon shows, that of the debts for which the executor was allowed a credit, nearly $3,000 was "for expenses, &c., incurred after the testator's death." The cause was submitted to the chancellor, on a motion for instructions to the master in stating the account for final settlement; and he thereon rendered a decree, holding that the legacy to the children of Harrison Lightfoot was general, and was therefore liable for the excess of debts before the descended lands could be resorted to. The account was stated in conformity with these instructions, and a final decree rendered accordingly; and from this decree the children of Harrison Lightfoot now appeal.

WM. RICHARDSON and LUKE PRYOR, for appellants:

I. The legacy to the children of Harrison Lighfoot is specific. It could be distinguished from the rest of the testator's estate at the time of his death.—Roper on Legacies, vol. 1, pp. 200, 203, 213, 217; White & Tudor's Leading Cases in Equity, vol. 2, pt. 1, pp. 397, 400, 221. Even the words 're-mainder', 'residue', &c., though in terms residuary, are some-times held specific.—Roper, vol. 1, pp. 240, 356. Specific

legacies only abate among themselves for the payment of debts, and are not resorted to until real estate descended is first exhausted.—White & Tudor's L. C., vol. 2, pt. 1, p. 405. Specific legacies are subject to ademption, while general legacies are not.—*Ib.* pp. 386, 405. That the doctrine of ademption is recognized in this State, see Roberts v. Weatherford, 10 Ala. 72. It is clear that this legacy could have been adeemed.

II. But, conceding this to be a general legacy, yet it will not be taken to pay debts, until the general personal estate, or personal estate unbequeathed, real estate devised for the payment of debts, and real estate descended, have been first exhausted.—White & Tudor's L. C., vol. 2, pt. 1, pp. 392–3. After-acquired lands, in the hands of the heir, will be charged with the debts, which are *per se* chargeable on land, even when there is a general charge on the land by the will.—*Ib.* pp. 225–6. In this State, all lands are chargeable with the debts of the deceased; and there is no distinction between specialty and simple contract creditors. When there are two funds to which creditors have a right to resort, a legatee shall not be disappointed by their act. If there are legacies and debts by specialty, and the real estate descends, if the creditors exhaust the personal estate, the legatee may come against the real estate in the hands of the heir, and a court of equity will marshall the assets for that purpose.—White & Tudor's L. C., vol. 2, pt. 1, pp. 183–4, 187–90.

3. Independent of the character of the legacy—whether specific, general, or residuary—it cannot be resorted to for the payment of debts until the real estate descended or after-acquired lands are exhausted, for another reason. Numerous decisions of this court settle the rule, that the intention of the testator, if not contrary to some positive rule of law, shall govern the disposition of his property; and that, to ascertain this intention, all parts of the will must be looked to and construed together. The application of this rule to the present case, it is insisted, shows that the testator intended that this legacy should be exempt from the payment of debts; and this intention being ascertained, a court of equity will so marshall the assets as to effectuate it.—Williams on Executors, vol. 2, pp. 1009, 1212; White & Tudor's Leading Cases, vol. 2, pp.

215, 225; Farley v. Gilmer, 13 Ala. 141, and cases cited. The case cited from 4 Mass. 357, was decided under a special statute, and has no application here.

4. This legacy vested immediately upon the testator's death. At common law, a vested specific legacy, free of all conditions and contingencies, if not postponed by the will, was payable immediately upon the testator's death; while a general legacy was not payable until the expiration of one year. White & Tudor, pp. 393–5. Under the statutes of this State, although the legacy vests immediately, it is not demandable until after the expiration of eighteen months, in order that the administrator may appropriate it, if necessary, to the payment of debts; but when the legacy is not required for the payment of debts, the legatee's right relates back to the testator's death, and draws interest or hire.—Hallett & Walker v. Allen, 13 Ala. 554; Broadnax v. Sims, 8 ib. 497. The chancellor's decree is therefore erroneous, in subjecting the hire of the negroes bequeathed to the children of Harrison Lightfoot to the payment of debts, in exemption of the after-acquired lands. So far as this question is concerned, there is no distinction between debts created by the testator in his lifetime and debts created in the course of administration after his death.

ROBINSON & JONES, contra :

1. The court properly charged the debts in question on the legacy to the children of Harrison Lightfoot, because the will, in terms, does the same.

II. The personal estate is the primary fund for the payment of debts.—Kelsey v. Western, 2 Comst. 501; Hayes v. Jackson, 6 Mass. 149; Tate v. Hardy, 6 Cowen's R. 333; Livingston v. Newkirk, 3 Johns. Ch. 312; White & Tudor's Lead. Cases in Equity, vol. 2, pt. 1, p. 215; Clay's Digest, p. 191, § 1. This, as a general proposition, is not denied by the appellants; but they seek to avoid its application in this case, on the ground, first, that their legacy is specific. On the contrary, that their legacy is residuary, or, at least, general, is shown by the following considerations :—

First—A specific legacy is a bequest of a particular chattel, specifically described, and distinguished from all others of the

same kind.—Lovelass on Wills, 440; Ward on Legacies, 16 ; Childress v. Childress, 3 Ala. 753; White & Tudor, vol. 2, p. 382. *Second*—A specific legacy fails, if the property cease to exist in specie before the will goes into effect, whether it be destroyed or changed into other property.—Ward on Legacies, 16 ; Lovelass on Wills, 441. *Third*—In regard to personalty, a will takes effect at the testator's death, and, in the absence of words showing a contrary intention, must be construed as if made at that time.—Hardy v. Toney, 20 Ala. 238; Atwood's Heirs v. Beck, 21 *ib*. 590. *Fourth*—When rules of construction have to be resorted to, the court always inclines against construing a bequest to be specific.—White & Tudor's Leading Cases, vol. 2, pp. 382, 406. *Fifth*—Specific legacies do not contribute to pay debts, in case of deficiency of assets, until the residuary and general legacies are exhausted ; but when this happens, specific legacies abate among themselves. Lovelass, *supra*, 441; White & Tudor, *supra*, 216, 405. The application of all these rules shows that this bequest is not specific.

At common law, a general legacy of personal property must be applied to the payment of debts before lands descended to the heir.—Livingston v. Newkirk, 3 Johns. Ch. 309; 2 Smith's Chancery Practice, 274 ; Hayes v. Jackson, 6 Mass. 149 ; White & Tudor's Leading Cases in Equity, vol. 2, p. 216, note; Jarman on Wills, vol. 2, p. 546. Some of the authorities, it is true, hold that lands descended are to be taken to pay debts before a general pecuniary legacy ; but none of them assert that such lands are to be exhausted before general legacies of personal property.

The statutes of this State adopt a new and arbitrary rule for the appropriation of assets to the payment of debts, and make debts, in the absence of any adequate provision for them in the will, primarily chargeable on the personalty, whether bequeathed or not, and whether the lands descend or not. The act of 1806 provides, that "the goods and chattels, or personal estate, of any person deceased, whether testator or intestate, shall stand chargeable with the payment of all the just debts and funeral expenses of the deceased, and the charges of settling said estate" ; and that "the lands, tenements, and hereditaments shall stand chargeable with all

the debts of the deceased, over and above what the personal estate shall be sufficient to pay as aforesaid."—Clay's Digest, p. 191, § 1. The act of 1822, authorizing an administrator to apply for the sale of lands to pay debts, requires him to state in his petition " that the personal estate is not sufficient for the payment of the just debts", &c.—Clay's Dig. p. 224, § 16.

Independent of the statute, lands are not assets at law; and the statute, above cited, only makes the lands liable to pay the debts of the deceased, and such, too, as are left unpaid by the personal estate : nothing is said about expenses, &c., as when speaking of personal estate. Descended lands, therefore, can only be appropriated to the payment of debts left by the deceased.—Drinkwater v. Drinkwater, 4 Mass. 357 ; Cannon v. Turner, 6 Har. & John. 65. The master's report shows that the excess of indebtedness to be here provided for was made up of the expenses of administration and other debts contracted by the executor.

GOLDTHWAITE, J.—The will, after making certain specific bequests and devises, and making a special appropriation of real and personal property for the payment of debts, proceeds thus,—" All the negroes not before bequeathed, and what surplus of money may be left after the payment of my debts, I will, give, and bequeath to the children of my brother Harrison Lightfoot, to be equally divided among them, and given off to them when they attain the age of twenty-one years, or marry." The will was made in 1842, and subsequently to its execution the testator acquired other lands. The specific fund appropriated to the payment of the debts is not sufficient ; and the sole question is, whether the deficiency is to be supplied out of the slaves given to the children of Harrison Lightfoot, or upon the after-acquired land.

This question, then, is governed by the rules of law which obtain as to the marshalling of assets between the legatee and heir,—whether the debts of the estate shall be charged against the legacy to the children of Harrison Lightfoot, or against the real estate descended.

By the law of England, the personal estate is the primary fund for the payment of the debts ; and the simple contract creditor, until the statute 3d and 4th Wm. IV, c. 104, could

not in any way have subjected the lands descended to the payment of his debt. The testator, however, by virtue of the right of control which he possesses over his own property, might, by express direction, or by plain implication, devote his real assets to the payment of his debts instead of his personal property ; and whenever this is done, courts give effect to the intention of the testator. To carry out these principles, courts of equity marshall the assets of estates, consistently with the claims and equities of parties interested in their administration ; and acting upon the presumption, whenever debts are chargeable on land, and the testator gives his personalty either pecuniarily or specifically, that it is a clear indication of his intention, unless the contrary appears from the will, that it is to be given to his legatee instead of being appropriated to these debts, for which another portion of his estate is bound, courts of equity will marshall the assets, so as to throw the debts on the fund out of which the testator intended they should be paid.

This is the whole doctrine of marshalling the assets as between the legatee and heir, and the decisions of the courts of equity in England fully sustain it. Thus, in 1679, in an anonymous case, reported in 2 Chan. Cases, 4, the real estate descended to the heir was made to pay the mortgage ; the chancellor said,—' Where the heir is indebted by mortgage made by his father, or by any other means as heir to his ancestor, the personal estate in the hands of the executor shall be employed to pay that debt in ease of the heir ; but if there be not other assets to pay other creditors, or other end of testator on his legacies, the heir shall not turn this charge on the personal estate. In this case, here was sufficient to pay the debt, &c., and the legacy out of the personal estate, and when both can be satisfied, both shall be satisfied ; and the contrivance to make the personal estate liable to the legacy towards satisfaction of the mortgage looks like a fraud, and shall not prejudice the legatee, but she shall have recompense against or upon the mortgage, though originally not liable to her." To the same effect is Culpepper v. Aston, 2 Ch. Cas. 114 ; Herne v. Meyrick, 1 Pr. Wms. 201 ; Hanby v. Roberts, Amb. 127 ; Aldrich v. Cooper, 8 Ves. 396.

In the cases we have cited, the legacies were, it is true,

pecuniary legacies; but they were general—that is, no spe-
cific fund or money was bequeathed; and the same principle
which applies to legacies of this character, also obtains where
any portion or all the personal estate is given as a whole, and
not as a residuary bequest. The giving in that way is then
held as demonstrative of the intention of the testator to ex-
empt the legacy from charges to which the general personal
estate is primarily liable. Thus, in Blount v. Hopkins, 7
Sim. 43, where the testator gave to his wife M. all his house-
hold goods, plate, linen, china, pictures, farming stock, ready
money, personal estate, and effects of every description which
he should happen to die possessed of, except certain articles
which he bequeathed to another person, and charged his debts
on real estate devised to trustees; the personal estate was
held to be exonerated from the payment of his debts. Bear-
ing in mind, that the fact of making provision for the pay-
ment of debts out of the real estate does not, of itself, indicate
any intention to discharge the personalty (2 Jarm. on Wills,
565, and cases there cited), the case referred to is strongly in
point, as it shows that the personalty was exonerated on the
ground that it was, in effect, a specific legacy. Here the gift
amounts to a bequest of all the slaves the testator had at the
time of his death, which he had not bequeathed to others.
Viewed in this aspect, the two cases are identical in principle,
and the rule which was applied in Blount v. Hopkins, *supra*,
is too well settled upon authority, to be shaken.—Jones v.
Bruce, 11 Sim. 221; Greene v. Greene, 4 Madd. 148; Mit-
chell v. Mitchell, 5 *ib.* 69; Driver v. Ferrand, 1 Russ. & M.
681; Fontaine v. Tyler, 9 Price, 37; Bethune v. Kennedy,
1 My. & Cr. 114; Stephenson v. Dawson, 3 Beav. 342;
Queen's College v. Sutton, 12 Sim. 521; Everett v. Lane, 2
Ired. Eq. 548; 2 Jar. on Wills, 580–589. The cases, as we
have already said, regard the gift of all the property which
the testator possesses of a specified kind, when not given as
a residuary bequest, as a specific legacy (Bethune v. Kennedy,
*supra*); and as being such, it is indicative of his intention
that the legatee shall receive it free from all debts which are
chargeable on the land.

By the law of this State, although the personalty is, as in
England, the primary fund for the payment of debts, yet the

real estate is bound for them; and no matter what may be the character of the debt, it with us binds the lands to the same extent that recognizances and debts by specialty bound the real assets in England; and consequently, the same rules which, in courts of equity there, regulated the charge of those debts upon the lands descended to the heir, apply here to all classes of debts; and hence the result in the present case would be, to throw the debts upon the undevised real estate which they bound, in exoneration of the legacy to the children of Harrison Lightfoot.

It follows from what we have said, that the decree of the chancellor was erroneous, and the same must be reversed, and the cause remanded, to be proceeded with in conformity with this opinion; the appellee paying the costs of this court.