# SANDERS *vs.* GODLEY'S ADM'R.

[BILL IN EQUITY AGAINST LEGATEE BY JUDGMENT CREDITOR OF TESTATOR.]

1. *Conclusiveness of judicial decisions.*—Under a bill filed by a creditor, against the personal representative and several legatees of his deceased debtor, seeking satisfaction of his debt out of the property in the hands of the legatees, the guardian *ad litem* of the infant legatees put in a formal answer, denying all the allegations of the bill; one of which allegations was, that the testator was indebted to the complainant. The only evidence of indebtedness adduced by the complainant was a judgment against the testator's executor, rendered after the executor's assent to the defendants' legacies. On writ of error from the chancellor's decree, one of the assignments of error by the defendants was, the rendition of a final decree for the complainant without any proof of the testator's indebtedness to him. In the opinion of the supreme court it was said, "The debt against the testator is well established." *Held,* on a second appeal by the defendants, after the infants had attained their majority, and had put in an answer requiring proof of the testator's indebtedness to the complainant, that this opinion precluded inquiry into the legal question, whether a judgment against the executor, rendered after his assent to the defendants' legacies, was, as against them, evidence of the testator's indebtedness to the complainant.

2. *Marshaling assets between legatees and heirs-at-law.*—A creditor will not be allowed, in equity, to enforce satisfaction of his debt out of slaves specifically bequeathed, when the legatee shows that there are descended lands, which, as between himself and the heir-at-law, ought to be first subjected, but will be required first to exhaust the latter fund; but, when the effect of such arrangement would be to lessen or impair the obligation of the creditor's contract, or to subject his claim to any additional peril, or to unreasonably delay him in the enforcement of it, the court will not thus interfere; consequently, when it is not shown who the heirs-at-law are, nor whether they are within the jurisdiction of the court, and it appears that, while the specific legatees are precluded by a former decision of the court from contesting the justice of the creditor's demand, the testator was in fact an infant when the liability was contracted, and that the only evidence of the debt is a judgment rendered against the executor, the creditor will be allowed to pursue his remedy against the specific legatees.

APPEAL from the Chancery Court of Madison.
Heard before the Hon. JOHN FOSTER.

THE original bill in this case was filed by Grandin F.
Godley, on the 23d October, 1841, against Mrs. Sarah
Sanders, James T. Kimble, and Nathaniel Terry as admin-
istrator *de bonis non* of John B. Fox, deceased; and sought
to subject certain slaves in the hands of Mrs. Sanders and
Kimble, to whom they were specifically bequeathed by
said Fox, to the satisfaction of a judgment which the
complainant, in the name of Horner, Blocker & Co. for
his use, had obtained against Robert A. High, as the exec-
utor of said Fox, in February, 1841. After Mrs. San-
ders had answered, giving the names of her children,
who took a vested remainder in the slaves bequeathed to
her for life, the bill was so amended as to make the chil-
dren parties; and their guardian *ad litem* afterwards put
in a formal answer for them, denying all the allegations
of the bill. Answers were also filed by the other defend-
ants. At the July term, 1850, the cause was submitted
for final decree, on bill, answers, exhibits, and proofs;
and the chancellor thereupon rendered a decree on the
merits for the complainant, and ordered a reference of
the matters of account to the master. At the July term,
1851, the master's report was confirmed, and a final
decree rendered for the complainant. From this decree
the defendants prosecuted a writ of error to this court,
where an opinion was pronounced, at the June term,
1853, reversing the chancellor's decree, and remanding
the cause.—See the case reported in 23 Ala. 473.

After the remandment of the cause, the death of the
complainant was suggested in the chancery court, and
the suit was revived in the name of James Throgmorton,
as his administrator; and other parties were subsequently
brought in, in consequence of deaths and marriages
among the children of Mrs. Sanders. At the December
term, 1856, the marriage of Mrs. Sanders with Thomas
Travis was suggested, and said Travis was joined as a
defendant with his wife. At the June term, 1857, leave
was granted to the children of Mrs. Sanders (then Travis),

who had in the meantime attained their majority, to file new answers; but similar leave was refused to Travis and wife. In the answer then filed by the children it was averred, that the testator's executor, before the rendition of the complainant's judgment against him, had assented to the legacy to themselves and their mother, and had delivered the slaves to the trustee appointed for their mother; that there was a large surplus of personal assets belonging to the testator's estate, not specifically bequeathed, which was more than sufficient to satisfy the complainant's demand, and which, if not in the executor's possession at the time of the rendition of the complainant's judgment, had been wasted and misapplied by him; that the testator was seized and possessed, at the time of his death, of valuable real estate more than sufficient to satisfy the complainant's demand, which was not devised by him, but descended to his heirs-at-law; and that the testator was an infant at the time of his death, and they pleaded his infancy in bar of the suit. They also incorporated in their answer a demurrer to the bill— "1st, for want of equity; 2d, because it does not show that the complainant has exhausted his legal remedies; 3d, because it does not allege that the administrator *de bonis non* of the testator had not assets sufficient for the payment of his alleged debt; and, 4th, because it does not show that the testator had not undevised real estate sufficient in value for the payment of said debt."

At the December term, 1857, the cause was again submitted for final decree, on pleadings and proof; and at the ensuing May term, 1858, the chancellor pronounced his decree, in favor of the complainant, holding himself precluded by the former decision of this court from examining the defenses set up in the answer of the children. From this decree all the defendants appeal, and here assign the same as error.

R. C. BRICKELL, for appellants.—1. The judgment against the executor, rendered in February, 1841, is the only evidence adduced of an indebtedness by the testator to the complainant; and this judgment is shown to have

been rendered after the slaves bequeathed to Mrs. Sanders had been delivered by the executor to her trustee. If this judgment had been rendered before the executor's assent to the legacy, it would have been evidence against the legatee; for, until that assent was given, the executor was vested with the legal title, and the legatee with an equity only, and the relation of trustee and *cestui que trust* existed between them. But, by the assent of the executor, this relation is destroyed, and the legatee becomes clothed with the legal title: they are henceforth strangers, and a judgment against the executor is *res inter alios acta* as to the legatee.—Redmond v. Coffin, 2 Dev..Eq. 443; Sturges v. Beach, 1 Conn. 508; Marr's Executor v. Southwick, 2 Porter, 372; Darrington v. Borland, 3 Porter, 10.

2. The proof shows, that the testator was an infant at the time of his death; and his infancy is one of the defenses relied on in the answers. The promissory note of an infant is voidable.—Reed v. Bachelder, 1 Metcalf, 559; Jefford v. Ringgold, 6 Ala. 548. Infancy, although a personal privilege, may be pleaded by the legal representative of the infant. Thus, a guardian may avail himself of his ward's infancy, to avoid a conveyance of his lands; and a purchaser from, or devisee of the infant, may also take advantage of it.—Freeman v. Bradford, 5 Porter, 270; Jackson v. Burchin, 14 Johns. 124; Breckinridge v. Ormsby, 1 J. J. Mar. 248.

3. The proof further shows, that the testator had a large real estate, which descended to his heirs-at-law, and which was of value sufficient to pay the complainant's demand. Descended lands are liable to the payment of debts, before specific legacies, or general pecuniary legacies.—Lightfoot v. Lightfoot, 27 Ala. 351. The slaves sought to be subjected in this case were specifically bequeathed.—2 White & Tudor's L. C. 397 (top). This suit is of the nature of a bill for marshaling assets. The equity of the creditor is to have contribution from the legatees for the payment of his debt, because there is no other fund which he can subject. It is a remedy to which he is not entitled until he has exhausted all other remedies, or shows by his bill that a pursuit of them would

be fruitless. To a suit of this character, all the legatees who have received their legacies must be made parties; the several legatees are only ratably liable, according to the value of their respective legacies; and if any one of them is insolvent, his portion of the debt is not chargeable on the others, although their legacies may be of value sufficient to satisfy the entire debt.—2 Lomax on Ex'rs, m. p. 176; Darrington v. Borland, 3 Porter, 10; Pyke v. Searcy, 4 Porter, 52. It follows, therefore, that when there is shown to be another fund within the creditor's reach, which is primarily liable for the debt, and which he has not pursued, his equity against the legatee fails. The adoption of any other principle would arm the creditor with the power of changing the administration of the estate, and of nullifying the will of the testator. The expressions in the former opinion pronounced in this case, seemingly opposed to this position, are mere *dicta*, and are contrary to principle and authority.

4. The former opinion delivered in this case, (see 23 Ala. 473,) does not preclude a decision of the legal questions above presented. The general principle invoked by the appellee, and which the chancellor considered decisive of the case, is not controverted; but it is insisted, that that principle only applies when the case is presented a second time on the same pleadings and proof as at first, and that it does not prevent the parties from placing upon the record in the primary court facts "which the justice of the case required should be there."—Kenan v. Strange, 12 Ala. 294. When a case returns to this court on a different state of facts from the first, the court will decide it as thus presented, without regard to the former decision. Walker v. Forbes, 31 Ala. 10. When this case was formerly before the court, there was nothing to show that the executor had assented to the defendants' legacies before the rendition of the judgment against him, nor could that assent be presumed; and hence the court might then properly declare, that the debt against the testator was established. Nor did the record then show that the testator was an infant at the time of his death, or that he died seized of real estate which was sufficient for the pay-

ment of this debt, and which descended to his heirs-at-law. As the record then stood, evidence of these facts would not have been admissible, because the pleadings did not allege them. The former answer of the guardian *ad litem* was only a denial of the allegations of the bill. After the remandment of the cause by this court, the infants, having become of age, were allowed to put in new answers, alleging these facts.—6 Paige, 353.

D. C. HUMPHREYS, *contra.*—The former decision of this court, as reported in 23 Ala. 473, is the law of this case, and precludes further inquiry into the questions argued by the appellant's counsel.—See the cases collected in Shepherd's Digest, 574, § 173-74.

R. W. WALKER, J.—The only evidence adduced by the complainant of an indebtedness by the testator is the judgment described in the original bill, rendered against High, the executor, in 1841. It is shown that the slaves bequeathed to the legatees, who are parties to this suit, had been delivered to them by the executor before the rendition of that judgment; and it is now said, that, this being the case, the judgment against the executor is not evidence, as against the legatees, of an indebtedness by the testator. This may be a correct legal proposition, but we feel constrained to hold, that the former decision of this court, delivered when the case was here before, precludes us from considering the question.

At the former hearing, the answer of the guardian *ad litem* denied and put in issue all of the material allegations of the bill; one of which was, that the testator was indebted to the complainant. On that hearing, the only evidence offered of the testator's indebtedness was the judgment against the executor; and, construing the original bill most strongly against the complainant, it was sufficiently apparent from its allegations, that the slaves bequeathed to the legatees were in fact delivered to them before the rendition of that judgment. The bill alleges, that the slaves bequeathed to the defendants " have been distributed to them, and are now in their possession";

and that when the judgment was rendered against High, "he had no goods or chattels, lands or tenements, which could be reached by process of law, either in his own right, or as executor of the said Fox." One of the errors assigned on the former appeal was, "that a decree was rendered in favor of complainant without any proof of the indebtedness of John B. Fox." Such was the condition of the record when this cause was first here; and this court then said: "The debt against the testator is well established; the insolvency of the executor and of the executor's sureties is also well established; and the third fact necessary to complete the right to relief is just as clear, namely", &c.—See Sanders v. Godley, 23 Ala. 473–476. If the debt was then established by the proof, it is so now. In proving that the slaves bequeathed to the legatees were delivered to them before the rendition of the judgment against the executor, the defendants have not introduced into the record a new fact not shown by it when the case was before in this court. They have only proved what was already sufficiently apparent from the allegations of the original bill filed by the complainant. The former decision is the law of the case, and cannot be questioned, or reversed, on a second appeal.

It is proper to remark, however, that it does not appear that, when the former appeal was tried, the court specially considered the question, whether the fact that the judgment against the executor was rendered after his assent to these legacies, would destroy its effect as evidence against the legatees, of the indebtedness of the testator. Hence, although we must adhere to that decision as the law of *this* case, we might not consider ourselves bound by it as a precedent in another case. As to the effect of a judgment against the executor, as evidence against the legatees, see Redmond v. Coffin, 2 Dev. Eq. 443; Lyon v. Vick, 6 Yerger, 42; Mason v. Peters, 1 Munf. 437–446; Atwell v. Milton, 4 H. & M. 253; 2 Williams' Ex'rs, 1181–1189, and note; Nunn v. Owens, 2 Strob. 101; 2 Lomax on Executors, 134–5.

2. In the new answer filed by the children of Mrs. Sanders, after the case was reversed by this court, it is alleged,

that the testator died seized of a valuable real estate, situated in Limestone county, which was not devised by him, but descended to his heirs-at-law, and was of value sufficient for the payment of his just debts. The proof shows, that the testator did die possessed of lands in Limestone county, which were not disposed of by his will, and which were of value sufficient to pay the complainant's debt. These facts were not in the case when it was here before, and they raise a new question not then presented. There are expressions in the opinion then delivered, which the chancellor considered as favoring the idea that, inasmuch as the heirs-at-law were not parties to the suit, it was proper for the court to decree against the legatees, and leave them to adjust their equities with the heirs, in another suit. Thus, it is said: "If there had been no other legatees, who received property or effects of the testator, parties to the bill, inasmuch as Mrs. Sanders and Kimble were each shown to have received more property than would satisfy the debt, the decree might have been supported, and they left to adjust between themselves the question of contribution." Again: "If they" (the remainder-men) "were not parties to this bill, and their mother and Kimble should be decreed to pay it, there would be a way open to recover contribution of them."—23 Ala. 473. We do not think that the expressions we have quoted are susceptible of the construction placed upon them by the chancellor. The question arising upon this branch of the case is, therefore, not settled by the former opinion.

The general doctrine is, that the personal property of a testator or intestate is the primary fund for the payment of his debts; and where a creditor has exhausted his legal remedies against the executor and his sureties, he may proceed in equity to subject the property in the hands of the legatees to the satisfaction of his demand.—Sanders v. Godley, 23 Ala. 476; Darrington v. Borland, 3 Por. 9; Ledyard v. Johnston, 16 Ala. 548.

In this State, although the personalty is the primary fund for the payment of debts, yet the real estate is also bound for them, irrespective of their character, to the same extent that recognizances and debts by specialty

bound real assets in England; and in marshaling the assets among the representatives of the realty and personalty, descended lands will be subjected to the debts of the testator, in exoneration of specific legacies.—Lightfoot v. Lightfoot, 27 Ala. 351; 2 Lomax on Ex'rs, marg. pp. 243–249; 2 Spence's Eq. Jur. 830.

It is an undoubted principle of equity, that the election of a party who has a right to recourse against two funds, shall not be allowed to defeat the rights of another person who has recourse to or an interest in but one of them. Aldrich v. Cooper, 8 Vesey, 382; White & Tudor's Lead. Cases, vol. 2, part 1, p. 185; 1 Story's Eq., §§ 558–9.

Some diversity of opinion has existed as to the mode in which the court will guard the rights of the person whose claim is confined to the single fund. All of the authorities agree, that if a creditor, having a choice of two funds, exhausts that one to which alone another claimant can resort, the latter will, in a court of equity, be subrogated to the rights of the former against the fund which is left untouched, and satisfied out of it to the extent to which the fund pursued by the creditor has been exhausted.

Many courts have gone a step beyond this, and held that, where one claimant has more than one fund to resort to, and another claimant only one, the first will be confined in the first instance to that which is beyond the reach of the second. Other courts declare the rule to be, that equity will not interfere with the election of a creditor in the first instance, unless he has been guilty of some neglect or default, although it will not allow that election to be the means of ultimate disappointment to other claimants. The practice of the courts last alluded to is, not to interfere for the purpose of excluding a creditor from one fund, and restraining him to another, but to protect other claimants of the fund which he has chosen to pursue, by subrogating them to his remedies against, and satisfying them, *pro tanto*, out of that which he has left untouched.

The question, whether the protection afforded by courts of equity in such cases may be by restraint, as well as subrogation, is thoroughly discussed by the American

editors of White & Tudor's Leading Cases, (vol. 2, pt. 1, pp. 229–35,) where the principal decisions upon the subject will be found collected and classified.—See, also, 1 Spence's Eq. Jur. 827, *et seq.;* 1 Story's Eq. §§ 559, 636.

The decisions of this court seem to recognize the rule first stated—namely, that where a creditor has two funds out of which he can satisfy his debt, and another party has a claim on only one of them, a court of equity will compel the creditor to resort in the first instance to that fund which the other party cannot reach.—Nelson & Hatch v. Dunn, 15 Ala. 517; Chapman v. Hamilton, 19 Ala. 126.

But the present case does not require us to decide whether a court of equity will so far interfere with a creditor, who has the choice of two funds, as to restrain him in the exercise of his purely *legal* remedies against either of them.    The right of the creditor of the testator to follow legacies assented to, is a mere *equity*, and should not be enforced inequitably.—McLure v. Askew, 5 Rich. Eq. 162. If a legatee, who is thus pursued in equity, shows that there is another fund subject to the satisfaction of the creditor's demand, and which, as between the legatee and the person in possession of it, ought to bear the burden of the debt, it is only equitable, we think, to require the latter fund, on which the legatee has no claim, to be exhausted before the legacy is subjected.—See Cornish v. Wilson, 6 Gill, 299; 1 Story's Eq. § 557; Chapman v. Hamilton, 19 Ala. 126; McElway v. N. Eng. Man. Company, 1 Stockton's R. 36.    The mere subrogation of the legatee to the remedies of the creditor against the other fund would often be inadequate relief, especially in cases like the present, where the legacy is of slaves, the loss of which would not, perhaps, be fully compensated for by the recovery of their mere pecuniary value.

It must, however, be borne in mind, that equity will not control a creditor in the use of any remedy to which he may be entitled, except when it can be done without injury to him, and is necessary for the protection of others. Great care must be taken, in making such an arrangement, not to lessen or impair in any manner whatever the obligation of the creditor's contract, nor to subject his

claim to any additional peril, nor to unreasonably delay him in the enforcement of it.—Post v. Mackall, 3 Bland, 511; Dorr v. Shaw, 4 Johns. Ch. 17; Wright v. Simpson, 6 Vesey, 714, and note to p. 737, (Sumner's ed.); Morrison v. Kurtz, 15 Ill. 193; Briggs v. Planters' Bank, 1 Freem. Ch. R. 574; 2 White's Lead. C., pt. 1, pp. 232, *et seq.;* Adams' Eq. 272, note 2; 1 Story's Eq. § 560; U. States v. Duncan, 12 Ill. 523; Behn v. Young, 21 Geo. 207; Gen. Ins. Co. v. U. S. Ins. Co., 10 Maryland, 517.

Now in this case, the former decision of this court precludes the *legatees* from contesting the justice of the complainant's demand as a debt of the testator. But the judgment against the executor is not evidence of the debt, as against the *heirs*.—2 Lomax's Ex'rs, m. p. 252; 4 Phil. Ev. (C. & H.'s ed. 1850,) p. 7; 3 Porter, 10. The record of that judgment is the only evidence which is furnished of the creditor's demand. Besides this, it is shown that the testator was a minor at the time he contracted the liability which is the foundation of the judgment. Under these circumstances, while we are constrained by the former decision of this court to hold that the *legatees* are precluded from disputing the existence of the complainant's debt, we are not prepared, upon the evidence shown by this record, to say that his demand is one of which he could enforce satisfaction out of the testator's descended lands in the hands of the heirs-at-law. Besides, it is not shown who the heirs-at-law are, nor whether they are within the jurisdiction of the court.

If we concede that the claimant of a fund which is pursued by a creditor can, in any case, compel the latter in the first instance to seek satisfaction of his demand out of another fund, it must at least be shown that this other fund is bound for the creditor's demand, (unless, indeed, it has been released from its liability by his neglect or default,) and that his remedy for reaching it is prompt and efficient.—Authorities *supra;* 1 Story's Eq. § 562.

These appellants, therefore, had no right to turn the complainant aside from his pursuit of them, and compel him to seek satisfaction out of the heirs, unless it appears from the record that the complainant had the right to

subject the testator's descended lands to the satisfaction of his demand, and that he can now be excluded from resort to the legacies, and turned over to pursue his remedy against the heirs or the descended lands, without danger of losing, or being unreasonably delayed in the the collection of his claim. As we cannot assert that these essential facts are shown by the record, we do not perceive that the chancellor erred in his decree against the defendants. If the heirs-at-law, or the descended lands, were, in point of fact, liable for this debt, it may be that the legatees can proceed against them for indemnity in another suit.

Decree affirmed.