31 207
95 577

# STEWART'S ADM'R vs. STEWART'S HEIRS.

[BILL IN EQUITY FOR SETTLEMENT OF ADMINISTRATION.]

1. *Jurisdiction of equity to settle administration.*—The settlement of a decedent's
estate, which has been commenced in the probate court, may be removed
into chancery by the administrator, whenever the powers of the former
court are inadequate to do complete justice between the parties; as where
the distributees seek to charge the administrator with the payment of
money, against which he has a complete equitable defense not available
before the probate court.

2. *Equitable sanction of unauthorized act.*—Where a decedent had contracted in
his lifetime for an exchange of lands, but died before titles were made,
though each party had entered into possession under the contract; and his
administrator, by agreement with the other party to the contract, procured

an order of sale, and sold the tract belonging to the decedent, which was bought in by the other party, who then conveyed his tract to the decedent's heirs-at-law ; and it appeared that the exchange was beneficial to the estate, —*held*, that a court of equity would sanction the transaction, and would not allow the distributees to charge the administrator with the nominal price for which the land sold.

3. *Extent of relief in equity*.—On bill filed by an administrator for a settlement of his trust, a single ground for equitable interposition being shown, the court will go on and close the entire administration.

4. *Equitable relief on ground of mistake*.—An administrator, having kept an estate together for several years, under the erroneous supposition and belief that he was acting under an order of court, cannot obtain relief in equity, on the ground of mistake, when it appears that no record evidence of such order ever existed, and that the probate judge never made any such order, because he considered the statute, of itself, a sufficient authority for keeping the estate together.

5. *Election by distributees as to ratification of unauthorized act of administrator*.—An estate having been kept together for several years by an administrator, under the erroneous supposition that he was acting under an order of court, the distributees may, at their election, either ratify his unauthorized acts, or hold him to a strict statutory accountability; but their election must be entire, and must be announced before entering on the account.

6. *Husband's right to wife's choses in action*.—If the husband does not reduce to possession, during coverture, his wife's distributive share of an unsettled estate in the hands of an administrator, the administrator cannot, after the death of the wife, hold her distributive share as an equitable set-off against a debt due to him from the husband.

7. *Liability of administrator*.—An administrator is chargeable, on settlement of his accounts, with the amount of a note taken by him for the price of property sold belonging to the estate, although he shows that the claim "proved insolvent;" but, where it is shown that a note, given for the price of a negro sold by him, was successfully defended as to a part of the demand, and that the loss is not attributable to the fault or laches of the administrator, he is only chargeable with the amount actually collected on it.

8. *Compensation of administrator*.—An administrator is entitled to compensation, on settlement of his accounts, except in cases of gross negligence or willful default.

APPEAL from the Chancery Court of Lawrence.

Heard before the Hon. JOHN FOSTER.

THIS bill was filed by Franklin C. Owen, against the heirs-at-law and distributees of John Stewart, deceased, for a settlement of his administration on the estate of said Stewart, which was pending in the probate court of Lawrence. It alleged, that said Stewart died, intestate, in 1834, leaving a considerable estate, but much involved in debt; that letters of administration on his estate were

afterwards, in 1834, granted to complainant by said probate court; that in 1835, soon after the passage of the statute authorizing the estates of decedents to be kept together, he applied to said court, at the request of the widow and family of the intestate, for an order authorizing the estate to be kept together for three years. The original bill alleged that, on an examination of the records of the probate court, the order allowing the estate to be kept together could not be found; while the amended bill averred that, since filing the original bill, complainant had been informed, and so stated the fact to be, that it was the practice of said orphans' court, under said act of 1835, not to make an entry of record of the authority granted for keeping an estate together.

The bill further alleged, that complainant, acting under the belief that he had authority under an order of court, kept the estate together, worked the plantation, paid all the expenses, and supported the widow and children out of the proceeds; that at the close of the year 1837, after the estate had been thus managed for three years, it was thought advisable to break up the plantation; that the lands and personal property were accordingly sold, under orders of court, at different times; that the moneys received from the estate, and from the sales of property, were applied in payment of the debts of the estate, and afterwards in distribution among those entitled to it; that the complainant's administration has proved highly beneficial to the interests of the estate, which would have proved almost insolvent if it had not been thus managed and kept together; that the sales of land were approved by the court, and titles were made to the purchasers; that partial settlements were made with said orphans' court, in 1836, 1838, 1839, and 1841; that the estate was much involved in litigation for many years, which being ended in 1850, complainant made application for a final settlement of his administration; that objections to his accounts were interposed by two of the female distributees, who had intermarried with Henry C. Ledbetter and James W. Ledbetter.

The bill further alleged, that the intestate, some short

time before his death, had made a verbal agreement with one Gibson for an exchange of lands; that no titles had been made by either party at the time of the intestate's death, but each had put the other in possession under the contract; that for the purpose of perfecting the titles to these lands, complainant made application to said orphans' court for an order of sale, under which he sold the tract belonging to the decedent's estate; that Gibson became the purchaser, at the nominal price of $400, and then conveyed his tract to the decedent's heirs-at-law; that this arrangement was made under legal advice, and that the exchange was beneficial to the estate.

It was further alleged, that at a sale of the personal property of the estate, made prior to the order for keeping the estate together, the intestate's widow became a purchaser of some articles, for which she executed her note; that when it was afterwards determined to keep the estate together, these articles were found to be necessary for the use of the plantation; that complainant accordingly purchased them from the widow, at the price which she had given for them, and surrendered her note to her; that the articles were used on the plantation, and were afterward sold as the property of the estate; that the transaction was known to the distributees, none of whom expressed any disapproval of it, and was afterwards confirmed by said probate court in one of the partial settlements. Also, that one William B. Jenkins, who had intermarried with one of the female distributees, and whose wife died after the filing of the original bill, purchased some of the property at a subsequent sale, and executed his note, with security, for the purchase-money; that the note was afterwards reduced to judgment, but the parties "proved insolvent," and nothing was collected on it; and that said Jenkins is entitled to the distributive share of his deceased wife. Also, that one Pleasant Craddock became the purchaser of a slave at one of the administrator's sales, and executed his note, with security, for the purchase-money; that suit was instituted on this note, and a judgment rendered for the administrator, but for less than the amount of the note,—

Stewart's Adm'r v. Stewart's Heirs.

"said Craddock being released from the balance by said judgment on account of the unsoundness of the said slave."

The bill prayed an account and settlement of the entire administration, and added the general prayer for other and further relief.

On final hearing, on pleadings and proof, the chancellor dismissed the bill for want of equity; and his decree is now assigned as error.

E. W. PECK, and R. O. PICKETT, for the appellant. 1. Although the settlement of an administration has been commenced in the probate court, it may be withdrawn from that court, and taken into the chancery court, whenever the powers of the former court are inadequate to the exigencies of the case.—Pharis v. Leachman, 20 Ala. 662; Dement v. Boggess, 13 Ala. 143; Horton v. Mosely, 17 Ala. 794; Blakey v. Blakey, 9 Ala. 391.

2. The complication of the accounts is sufficient to authorize a resort to chancery.—Gould v. Hays, 19 Ala. 438; 15 Ala. 246; 8 Porter, 397; 5 Stew. & P. 133.

3. The mistake under which the administrator acted, in keeping the estate together, is a good ground for equitable relief.—1 Story's Equity, § 140; Benford v. Daniels, 13 Ala. 667.

4. The jurisdiction of equity having attached for one purpose, that court will go on and close the administration.—Blakey v. Blakey, 9 Ala. 391; 8 Porter, 399.

5. On taking the account, the distributees cannot hold the administrator to a strict settlement under the statute, and yet claim the benefit of all his acts in the management of the estate; but they will be required to elect on which principle the account shall be stated.—McCreliss' Distributees v. Hinkle, 17 Ala. 459.

DAVID P. LEWIS, contra.—1. The principal object of the bill is, to supply records of the probate court which were never in existence, and then to impart to them a force and conclusiveness which, had they existed in the most

regular and authentic form, they would not have possessed. Steele v. Knox, 10 Ala. 608. Chancery has no jurisdiction of such a case. The only remedy is by motion to amend, *nunc pro nunc*, in the probate court.

2. The exchange of lands with Gibson furnishes no ground for the interposition of equity. The bill does not allege that the appellees seek to charge the administrator, with the proceeds of the exchanged lands; and if this was shown, the probate court is as competent to adjust the question of assets on this voucher as on any other in the account. The bill shows an executed contract, in which the parties have acquiesced for upwards of twenty years, and does not allege any symptom of dissatisfaction on the part of the distributees. If the distributees should attempt to disturb Gibson's vendees, their defense is an enterprise with which the administrator has no concern. If they seek to charge him with the proceeds of the lands sold by him, he is estopped, both at law and in equity, from setting up the matters alleged in the bill touching that transaction.

STONE, J.—We think the chanceller erred, in dismissing this bill for the want of equity. During the lifetime of Mr. Stewart, he had agreed with Mr. Gibson for an exchange of eighty acres of land; and pursuant to that agreement, each party had taken possession of the land thus obtained from the other. No title had been made by either; and hence, to perfect the exchange, a resort to some legal proceedings became necessary. The plan adopted in this case was an application by Mr. Owen, the administrator, to the orphans' court for leave to sell the land which had fallen to Gibson in the exchange. The order was granted, the land sold, and Gibson became the purchaser. A title was afterwards made to Gibson; and he thereupon executed a conveyance to the heirs of Stewart of the eighty acres which fell to the latter in the exchange. The four hundred dollars purchase-money, the price at which Gibson had bid off his eighty acre tract, was not paid by him. In fact, this entire arrangement seems to have been entered into as a cheap and simple

method of quieting and perfecting the titles. The record tends strongly to show that, in the petition and order of sale, there is a misdescription of the numbers of the land which fell to Gibson. The proof is full and satisfactory, that the alleged exchange of lands was in fact made by Stewart and Gibson ; and the proof is equally satisfactory, that the exchange was highly beneficial to Stewart and his heirs. The estate has had the benefit of the eighty acres obtained from Gibson ; and we have no hesitation in holding, that the distributees of Stewart have no right to charge the administrator with the four hundred dollars, or any part of it, for which Gibson bid off his land.

Waiving the consideration of the question, whether an administrator can himself transfer the settlement of his administration to the court of chancery, a clear reason exists in this case for sustaining this bill.—See Mallett v. Dexter, 1 Curtis, 178 ; Horton v. Mosely, 17 Ala. 794 ; 1 Story's Equity, § 544 ; Dement v. Boggess, 13 Ala. 140 ; Leavins v. Butler, 8 Porter, 380 ; Harrison v. Harrison, 9 Ala. 470 ; King v. Smith, 15 Ala. 264. In this case, the peculiar ground for equitable interposition is the matter of the exchange of lands above mentioned. The Ledbetters, by their answer, do not admit the administrator's right to perfect the exchange ; but their answer tends strongly to show, that they are willing to charge him with the $400 purchase-money *nominally* promised by Gibson, and any other liability which, under strict rules of law, they can fasten upon him. In this contest, the court of probate is wholly inadequate to render complete justice ; and this gives the court of chancery jurisdiction, on the principle, that the court of chancery will legalize and sanction what the court itself would, on a proper application, have ordered to be done.—Elliott v. Horn, 10 Ala. 348 ; Wilson v. Sheppard, 28 Ala. 629.

This feature of the case gives the chancery court jurisdiction, according to the principles settled in Horton v. Mosely, 17 Ala. 794 ; and having jurisdiction for one purpose, this will draw to it the right to adjust the entire administration.—King v. Calhoun, 5 Ala. 523.

The bill alleges, that Judge Wallace, then the judge of

the orphans' court of Lawrence county, made an order to keep the estate together under the act of 1835; but that conceiving it to be unnecessary to enter said order on the records of his court, he made no entry or record thereof. The answer puts this averment in issue. The proof does not sustain this averment of the bill; but tends strongly to prove, that the construction placed on this statute by Judge Wallace was, that the act itself gave the authority to keep the estate together, without any order of the court to that effect. In this he evidently misapprehended the law.—See Clay's Digest, p. 198, § 30. But, if the averment of the bill was proved, it would be wholly insufficient. The judgments of courts of record can only exist in the records of the court. They can not exist in parol, or be proved by oral evidence. Oral evidence is even wholly inadmissible, on an application to enter a judgment *nunc pro tunc.*—Hall v. Hudson, 20 Ala. 284; Hudson v. Hudson, *ib.* 364; Perkins v. Perkins, 27 Ala. 479.

Under this view of the authorities, we feel it our duty to declare, that this administration must be settled, as if no order to keep the estate together had ever been asked for, or pretended to have been granted. It results, that the administrator was clothed with only the general powers of administrators, which, under our statutes existing when Owen was appointed, were, to collect together the assets, obtain an order, and under it sell the goods that were strictly perishable; pay the debts; and, if his intestate was engaged in planting, and died "after the first day of January," to continue the servants or slaves of which he was possessed, and which were engaged in making a crop, on the plantation in the occupation of decedent at the time of his death, until the last day of December following.—Clay's Digest, 196, § 19. Further, if necessary, to obtain an order for the sale of so much of the personal estate as might be necessary for the payment of the debts; after exhausting the personal estate, to obtain an order and sell the real estate, if needed to pay debts; or to sell land in preference to slaves, if it be made to appear that the estate of the decedent, or those entitled to inherit the same, would be less injured thereby.—Clay's Digest, 223,

§ 13; *ib.* 195, § 18; *ib.* 224, §§ 16, 17, 18, *et seq.* After eighteen months, the distributees had the right to call for distribution, unless some special reason existed for greater delay.—Digest, 196–7, §§ 23, 24; 2 Williams on Ex'rs, 640–9; 2 Kent's Com. 415–20.

We believe we have given an outline of the general duties of administrators, as they existed in 1834. They had no authority to keep up the planting interest, longer than the close of the year during which decedent died. The act of 1835 only gave them such authority, when they obtained an order therefor. That was not done in this case; and hence the continuance of the planting interest, after the year 1834, was unauthorized and illegal.

Arriving at these conclusions, it follows necessarily, that the distributees are clothed with the option of ratifying the unauthorized act of the administrator. Should they do so, they will be entitled to distribution out of the proceeds of the plantation, after deducting for all reasonable expenses and charges. Or, they may elect to hold the administrator accountable for the rent of the land, the hire of the slaves, and other property employed by him in planting, after the year 1834, up to the time of the sale. This election they must announce before entering upon the accounts; and if they, or any number of them, elect to proceed for rent of the land and hire of the slaves, they will not be entitled to any of the proceeds of the plantation after the first year. The election must be entire and indivisible. In other words, neither of the distributees will be permitted to claim any interest in the proceeds of the plantation for the years 1835–6–7, and hire or rent for any part of said time. No one distributee will be permitted both to ratify and renounce the continuance of the plantation.

While we feel it our duty to declare the law as above stated, the record abundantly shows that Owen acted under the honest conviction that he was authorized to keep the estate together under the act of 1835; that he managed the estate prudently and successfully; and that the consequence of his management has been to pay the estate out of its embarrassments, to support and rear the

family, and to save for them a considerable patrimony; whereas, if he had pursued the ordinary course, we think there would have been little or nothing left for the support of the family, or for distribution. Under these circumstances, we have to regret the necessity, which the law casts on us, of enforcing a rule which we think cupidity is mainly instrumental in invoking.

If the distributees so elect, the administrator must be held to the first sale made of the perishable and personal property, and will not be allowed to charge the estate for the re-purchase he made from Mrs. Stewart. That was made, as we have seen, without authority; and the distributees are not bound to ratify or accept it. If the administrator be held to the first sale, he must not be charged for the subsequent use of that property, or with its proceeds on the second sale. Neither will he, in that event, be chargeable with the proceeds of any property which he received in exchange for the property bought back by him from Mrs. Stewart.

We know of no principle of law, which will authorize the administrator to set off the debt due from Wm. B. Jenkins and others, against the distributive interest due to the estate of Mrs. Maria Jenkins, his late wife. That distributive interest, so far as the same remains unpaid, is but a chose in action; and Jenkins, not having reduced it to possession during the continuance of the coverture, can not assert his marital rights over it after the termination of the coverture by the death of Mrs. Jenkins.—Montgomery v. Givhan, 24 Ala. 568; Bibb v. McKinley, 9 Por. 636; Andrews v. Jones, 10 Ala. 442.

Under the pleadings in this case, we do not think the complainant places himself in a condition to dispute his liability for the Jenkins debt. That debt was created in the purchase of property from the administrator; and he, the administrator, took the note. *Prima facie*, he is chargeable with the amount of the sale-bill, and he has given no reason why he should not be charged with this item. The averment is, that this claim "proved insolvent." It is not averred that the makers of this note were either solvent, or reputed to be solvent, at the time the note was executed.

The administrator must be charged with this item. But the debt of Pleasant Craddock stands on a different principle. If that suit was successfully defended, as to a part of the demand; and the loss is not imputable to the fault or *laches* of the administrator, it should not be charged against him. This question is referred to the registrar.

The rule in regard to commissions, as settled by repeated decisions of this court, is to allow them, "except in cases of gross negligence, or willful default."—Gould v. Hays, 19 Ala. 438; Carroll v. Moore, 7 Ala. 617; Phillips v. Thompson, 9 Por. 667; Powell v. Powell, 10 Ala. 914; Emanuel v. Draughan, 14 Ala. 302. Under this rule, the administrator is clearly entitled to commissions in this case, to the extent after stated.

The decree of the chancellor is reversed; and this court, proceeding to render such decree as should have been rendered in the court below, doth hereby order, adjudge, and decree, that the said administration be settled in the chancery court of Lawrence, according to the principles of this opinion. In taking the account, the registrar will state the account first between the administrator and the estate. He will charge the administrator with all the assets that have come to his hands, according to the principles of this opinion, and he will credit him with all the debts of the estate of the said Stewart, which have been paid by him. He will also credit him with the expenses of the plantation for the year 1834, and allow him reasonable compensation for any special and extra attention he may have bestowed in and about the plantation during the year 1834.—See Pinckard v. Pinckard, 24 Ala. 250. So, if the distributees elect to ratify the unauthorized continuance of the plantation, and take the proceeds of the crops, the administrator will likewise be entitled to like compensation for his reasonable care and expenses in keeping up the plantation afterwards. If, however, they elect to hold him accountable for the rent of the land, and the hire of the negroes and other property, then the administrator will be entitled to no commissions on those items for the years 1835, 1836, and 1837.

The administrator must be allowed 5 per cent. com-

missions on all the money assets of the estate which he reduced to possession, except for the rent of land and hire of negroes for the years 1835–6–7, if the distributees elect to charge him for them.   He is also entitled to a credit of 2½ per cent. commissions on all sums of money paid out by him in extinguishment of the debts of the intestate, and the expenses of the plantation during the year 1834. He is also entitled to a reasonable allowance, to be fixed by the registrar on proof, for any special services he may have rendered, and expenses he may have incurred, in the prosecution or defense of litigation in which the estate was involved, unless such litigation was brought about by the fault or the laches of the administrator.—Bendall v. Bendall, 24 Ala. 295.   The registrar will also make him any other proper allowances to which he may be entitled.

After adjusting the general administration and its accounts, the registrar will proceed to state an account against each distributee who comes in and claims distribution.   He will charge each with all reasonable expenses, board, clothing, education, and all other payments and expenses incurred for the benefit of such distributee; the same to be settled after hearing such proofs as may be offered on these points.   The registrar will also allow him five per cent. commissions on all sums of money which he expended and incurred for the support, education and maintenance of such distributee.   Any moneys paid by him to the guardians of the distributees, towards their distributive interests, stand on a different principle. On these the administrator is entitled to no commissions.

Let the costs of this appeal be paid by the appellees; and let the costs in the court below be decreed by the chancellor, on the coming in and confirmation of the report.