# SMITH *vs.* KENNARD'S EXECUTOR.

[BILL IN EQUITY BY LEGATEES AGAINST EXECUTOR, FOR RECOVERY
OF LEGACIES, ACCOUNT, &c.]

1. *Power and duty of executor, under will, in supporting and educating minor children.*—Where the testator directed his estate to be kept together, and his slaves to be hired out by his executor, until his youngest child attained full age or married, when the slaves were to be sold for general distribution among all his children; bequeathed to each child a pecuniary legacy, to be paid as they severally arrived at full age or married; set apart the hire of the slaves, with the proceeds of the sale of certain real estate directed to be sold, as a fund for the payment of the legacies; and added, "It is my wish, that my minor children be educated and supported out of the same fund that their legacies are to be raised out of,"—*held,* that the executor, although he was not appointed guardian of the minor children, was authorized to disburse from the proper fund whatever might be necessary for their support and education.

2. *Marshalling assets among legatees.*—Where the expenses of supporting and educating minor children are charged exclusively upon a specific fund, upon which certain pecuniary legacies are also charged, but the latter are not limited to that specific fund, a court of equity will, if necessary, so marshal the securities as to give to the former charge a priority of payment out of the specific fund.

3. *Liability of executor for interest.*—An executor will not be charged with compound interest, on the final settlement of his accounts in equity, unless it appears that he has been guilty of such gross neglect in the execution of the trust as to be evidence of a corrupt intention.

4. *Compensation of executor.*—To deprive an executor of all right to compensation, it must appear that he has been guilty of gross negligence, or willful default, resulting in injury to the estate.

5. *Solicitor's fees, and costs.*—In this case, (bill filed by legatees against executor, for recovery of legacies, account and settlement,) it appearing that the protracted litigation was caused by the equal fault of both parties, one half of the executor's counsel fees, and one half of the costs, were imposed upon the executor individually, and the other half ordered to be paid out of the trust fund.

APPEAL from the Chancery Court of Madison.
Heard before the Hon. JOHN FOSTER.

THE bill in this case was filed, in September, 1840, by Silas M. Smith and wife, with others, claiming as legatees under the will of James J. Kennard, deceased, against

Henry King, the executor, and the sureties on his several official bonds; and sought a recovery of the complainants' legacies, an account, and settlement of the estate. The testator died in Madison county, the place of his residence, in October, 1824; and his last will and testament, of which he appointed Henry King and Stephen King the executors, was there admitted to probate soon after his death. After devising and bequeathing to his wife, during life or widowhood, the tract of land on which he resided, several slaves, certain household and kitchen furniture, plantation tools, &c., the will contained the following clauses: "It is my desire that, after the death of my wife, the quarter-section of land I lent her during her life be sold, and all the rest of the property which I lent her. I give to my son Joseph Kennard $400," together with some cattle, hogs, &c. "I give to my daughter Nancy M. Winfrey all the property that I have heretofore given her, to her and her heirs forever. I give to my daughter Penelope C. Blackman all the property which I have heretofore given her, to her and her heirs forever. All the rest of my children, viz., Charles H., Polly G., Adeline P., James M., Nathaniel W., Eleanor E., George M., and Louisa C. Kennard—it is my desire, that as they arrive at lawful age, or marry, to have $525; and likewise the child or children that my wife is now pregnant with, have the same. It is my desire, that my negroes, Caroline," &c., (specifying them,) "be hired out until my youngest child comes of age or marries, and the money arising therefrom to be applied in the discharging of the legacies to my children; and then to be sold, and equally divided among all my children. It is my desire, that the quarter-section of land adjoining the plantation whereon I now live on the west, and likewise the quarter-section of land where James Blackman now lives, be sold, at one, two, and three years' credit, and the money to be applied in discharging the legacies to my children. It is my wish, that the seven lots which I have in Erie, in the county of Greene, and which John Kennard, as my attorney, has had the management of, be sold, at one, two, and

three years' credit; and the money which he has collected, and is to collect, be applied to the payment of my debts. The property that is in the hands of Shelby, as my attorney, in the town of Demopolis, in Marengo county, (if not sold,) I wish to be sold, and the proceeds to be applied in discharging the legacies to my children. It is my wish, that my minor children be educated and supported out of the same fund that their legacies are to be raised out of. I wish my crop of cotton to be sold, and the proceeds to go in paying my debts. I give my shot gun to my son Charles. All the rest and residue of my estate, not heretofore given away, I desire to be sold by my executors, and the proceeds to be applied in the same manner as money arising from other sales."

Henry King alone qualified as executor. The testator's widow died in 1834. His youngest child married in 1838. Several of the children died before the bill was filed, and their legal representatives were made parties to the suit; and there were also several deaths during the progress of the suit. Some of the children purchased property at the executor's sale, in 1839, and gave their notes, with sureties, for the purchase-money. On some of these notes, the executor had instituted suits, and obtained judgments; which judgments the bill sought to enjoin, and to set off against them the several amounts due to the complainants under the will.

The executor filed his answer to the bill in June, 1841; exhibiting an account of his receipts and disbursements, sales of property, &c.; alleging his inability to have made an earlier settlement by the failure of the complainants, whom he had sued, to pay their notes for the purchase of property, and their refusal to let the amount due on their notes go in part payment of their interests in the estate; and demurring to the bill, for multifariousness, for misjoinder of parties, for want of equity, and because the complainants had a complete remedy at law.

At the November term, 1841, the matters of account were referred to the master, who made his report to the

ensuing May term, 1842. The defendant King excepted to that portion of the report which charged him with interest on the funds in his hands, but the chancellor overruled his exceptions; and in May, 1848, he filed an amended answer, under oath, in which he alleged that he had never applied any part of the trust funds to his own private use. In November, 1848, King filed a cross bill, alleging the payment of various legacies, and asking the benefit of all such payments; and most of these payments were admitted in the answers to the cross bill. In January, 1853, King paid into court, under an order, three thousand dollars, the sum admitted by him to be remaining in his hands; and the money was loaned out by the master until the final disposition of the cause. Several references to the register were made pending the suit, and several accounts were stated by him, to which numerous exceptions were reserved by both parties. The cause was submitted for final decree, on pleadings and proof, at the June term, 1857; when the chancellor ordered distribution of the funds in court, after payment of the costs of suit and a fee to the executor's solicitor, among the several legatees whose legacies had not been previously paid.

The appeal is sued out by the complainants. The errors assigned are—1st, the allowance of credits to the executor for disbursements made by him for the support and education of the testator's minor children; 2d, the refusal of the chancellor, on exceptions to the master's report, to charge the executor with compound interest, or to make annual rests in stating the account against him; 3d, the allowance of commissions to the executor; 4th, the order for the payment of the executor's solicitor's fee out of the funds in court; and, 5th, the order for the payment of the costs out of the same funds.

JAMES ROBINSON, for appellants.—1. The defendant ought not to have been allowed credits for moneys expended by him in the support and education of the minor children. The education and support of the minors was not a charge

on the estate generally, but a special fund was set apart for that purpose. Moreover, if those disbursements were authorized out of the estate, the executor was not the proper person to make them : he was not the guardian of the children, and had no right to control them, or to superintend their support and education.—*Peyton v. Smith,* 2 Dev. & Bat. Eq. R. 325. Not being guardian, he will not be permitted to blend the two characters.—*Willis v. Willis,* 9 Ala. 334.

2. The defendant ought to have been charged with compound interest. His amended answer, denying on oath that he had used the funds of the estate, was not filed until the lapse of eight years from the commencement of this suit, and after he had been charged with interest in an account stated by the master under an order of the court. In this particular, his amended answer is disproved, both by his own subsequent answers to the interrogatories propounded to him by the complainants, in which he admits that he had blended the trust funds with his own, and could not at any time distinguish them ; and by the deposition of the register, who testifies, that the money deposited by him in court consisted, for the most part, of notes issued by banks which were chartered long after he had collected the funds belonging to the estate. His liability for compound interest, under all the circumstances disclosed by the record, is sustained by the following authorities: *Scheffelin v. Stewart,* 1 John. Ch. 620 ; *Raphael v. Bonham,* 11 Vesey, 103; *Nightingale v. Lawson,* 1 Bro. Ch. 443; *Evertson v. Tappan,* 5 John. Ch. 497; *Manning v. Manning,* 1 John. Ch. 535 ; *Dunscomb v. Dunscomb,* 1 John. Ch. 507 ; *Powell v. Powell,* 10 Ala. 900; *Moseley v. Ware,* 11 Vesey, 581; *Myers v. Myers,* 2 McCord's Ch. 266 ; *Jones v. Foxall,* 13 Eng. L. & Eq. 142 ; *Whiting v. Walker,* 2 B. Mon. 262; 2 Story's Equity, §§ 1277–8.

3. The record makes out a clear case of willful default and gross negligence on the part of the executor, which deprives him of all right to compensation.—*Gould v. Hayes,* 19 Ala. 459 ; *Powell v. Powell,* 10 Ala. 914.

4. The litigation was caused by the default of the executor, and he ought to have been taxed with the costs; instead of which, the chancellor imposed all the costs, and even the fees of the defendant's solicitors, on the trust fund.—2 Williams on Executors, (2d Amer. ed.) 1463–4; 1 Vesey, 294; 11 Vesey, 58, 581; *Newton v. Bennett,* 1 Bro. Ch. 362; *Manning v. Manning,* 1 John. Ch. 535; 1 Ired. Eq. 326; 17 Eng. L. & Eq. 500; 19 *ib.* 279; 4 Hen. & M. 431; 2 *ib.* 26; Rice's Eq. 51; 7 Barr, 455; 1 Strob. Eq. 394; *Bendall v. Bendall,* 24 Ala. 306; *Pearson v. Darrington,* 32 Ala. 273.

STONE, J.—The will of Mr. Kennard, out of which this litigation has grown, imposed active duties and trusts on his executors, to continue until the youngest child should come of age, or marry. Among these active dutes was the direction to hire out the slaves, Caroline, Charlotte, Liza, Dave, Big Eady, Little Eady, Rachel, and Amanda; and when that event—the majority or marriage of his youngest child—should come to pass, then the executors were directed to sell said slaves for general distribution among all of testator's children. The will also gave to each of the minor children, of whom there were several, and one in *ventre sa mere,* a pecuniary legacy of $525, to be paid as they severally arrived at age, or married. The will then set apart the hire of said slaves, the proceeds of two quarter-sections of land ordered to be sold, and the proceeds of certain property in the town of Demopolis, for the payment of the legacies to testator's children. After this, the will adds: "It is my wish, that my minor children be educated and supported out of the same fund that their legacies are to be raised out of."

[1.] It is objected against the allowance made to the executor, for moneys paid by him in the education and support of the minor children, that the will did not constitute him guardian of such minors, and therefore he was not the proper person to make such disbursements. The will of Mr. Kennard clearly shows, that it was his intention and

direction that the bulk of his estate should be kept together, until his youngest child came of age or married. During all that time, most of his estate was, and would be, necessarily, in the hands of the executor. The minor children could claim no part of their legacy, either under the special or residuary clause, until they severally attained to lawful age or married ; save their education and support, for which the will made provision. Under these circumstances, we think it clear, that the executor was fully authorized to disburse from the proper fund whatever might be necessary for the education and support of the minors. The direction for the education and support of the children was as much a bequest, as was any other provision of the will ; and the duty it enjoined was purely executorial.—See *Pickens v. Pickens*, 35 Ala. 442. ,

[2.] It is further objected, that the disbursements made by the executor in the education and support of the minor children, should not have been allowed as general credits to him in his final settlement, but should have been allowed only out of the special fund on which they were charged in the bequest. We deem is unnecessary to inquire into the question, whether the education and support of the minor children was a charge, limited to the three funds specified in the will—namely, the hire of the slaves, the sale of the two quarter-sections of land, and the sale of the property in Demopolis. If such be the case, it cannot change the result in this case, as we will now proceed to show. The pecuniary legacies, although charged on these three funds, are not limited to them for payment. Should those funds fall short in the payment of the legacies, it is obvious the deficit must be made up from the general assets. The pecuniary legacies, then, can assert no preference or priority of payment over the expenses for education and support ; but, if the latter be limited to those funds, and cannot be paid out of the general assets, then equity will marshal the securities, so as to give to the expenses for education and support a prior claim of payment.—*Marine Dock & Mutual Insurance Company v. Huder*, 35 Ala. 713 ;

*Chapman v. Hamilton*, 19 Ala. 121 ; *Carter v. Balfour, ib.* 814 ; *Lightfoot v. Lightfoot*, 27 Ala. 351. It being shown, then, that, on this supposition, the charge for education and support would have a prior claim on these funds for payment, it only remains to inquire, whether the hire of the slaves, the sale of the two quarter-sections of land, and the sale of the property in Demopolis, yielded a sufficient fund for the payment. Looking into the register's report, we find they yielded a considerable surplus, which passed into the fund for the payment of the pecuniary legacies, and the several interests under the residuary clause. It requires, then, no elaboration to show, that the solution of the question propounded above becomes unimportant.

[3.] The other questions raised by the assignments of error relate to the rule of computing interest against the executor, his right to compensation in the shape of commissions, the payment of his solicitor's fees out of the trust fund, and the question of costs in this suit. On none of these questions do we deem it necessary or proper that we should travel out of our own decisions, in search of the rule. The doctrine on these subjects is settled in Alabama.

We hold, that Mr. King was properly chargeable with interest, and that the chancellor did right in refusing to charge him with compound interest. He was negligent, but does not appear to have been "guilty of such gross neglect in the execution of the trust, as to be evidence of a corrupt intention."—*Bryant v. Craig*, 12 Ala. 354 ; *Pearson v. Darrington*, 32 Ala. 227, 268.

[4.] So, Mr. King was entitled to commissions as executor. He is not shown to have been guilty of "gross negligence, or willful default." Under our decisions, the personal representative, to deprive himself of all right to compensation, must have been guilty of gross negligence, or willful default, resulting in injury to the estate.—*Powell v. Powell*, 10 Ala. 914 ; *Gould v. Hayes*, 19 Ala. 438 ; *Stewart v. Stewart*, 31 Ala. 207, 217 ; *Pearson v. Darrington*, 32 Ala. 227, 270 ; *Emanuel v. Draughan*, 14 Ala. 302.

[5.] The executor is also entitled to have his solicitor's

fees paid out of the trust fund, unless the litigation was brought about by his own fault or laches.—*Bendall v. Bendall*, 24 Ala. 295 ; *Williamson v. Mason*, 23 Ala. 488 : *Stewart v. Stewart*, 31 Ala. 207, 218 ; *Pearson v. Darrington*, 32 Ala. 227, 273 ; *Pickens v. Pickens*, 35 Ala. 442 ; *Henderson v. Simmons*, 33 Ala. 291. Under this rule, we hold, that the litigation in this case was, in its extent, caused by the equal fault of the complainants and Mr. King. We, therefore, divide both the defendant King's solicitor's fees, and the costs in the court below. In other words, half the costs in the court below must be taxed against Mr. King ; and the other half of the costs, and half the solicitor's fees, must be paid out of the fund deposited with the register.

Let the costs of this appeal be paid equally by Mr. King, and by the adult male appellants.

Reversed and remanded.

NOTE BY REPORTER.—This case was decided at the June term, 1860, but the record was for some time mislaid.