IVEY ET AL. *vs.* COLEMAN, EXECUTOR.

[FINAL SETTLEMENT—EXECUTOR—DUTIES—LIABILITIES.]

42 409
127 342

1. *Bill of exceptions; construction of.*—Where a bill of exceptions states, that "upon the foregoing evidence, and admissions, the written vouchers on file, and on no other evidence," the court rendered its final decree ; and only the evidence in relation to the contested vouchers is set out, and there were other vouchers, uncontested, which are not set out, and it is objected that this court cannot review the decree of the court below, because all the evidence is not set out,—*held,* that as the bill of exceptions sufficiently shows, that all the evidence upon which the court

26

acted, having relation to the contested items, is set out, the objection is not well taken.

2. *Executor ; interest ; affidavit.*—An executor, to exempt himself from the payment of interest on funds of the estate in his hands, must "expressly deny on oath," (Revised Code, § 2148, (1813,) ) that he has used the funds for his own benefit. In the absence of such an affidavit, an executor is chargeable with interest on the amount of the sales of real and personal property ; and, generally, is to be charged with interest on all his receipts, and allowed interest on all his disbursements, on account of the estate.

3. *Same ; mixing funds ; conversion.*—Where the evidence shows, that an executor has not kept the funds of the estate in his hands unemployed, but has mixed them with his own, such mixture of funds amounts to a conversion, and he will be liable for interest on the funds so converted.

4. *Same ; notes for property sold ; other notes.*—Notes payable to the executor, as such, and given on a sale of the property of testator, *prima facie* chargeable against the executor ; as to notes, and other choses in action, left by the testator, and not resulting from a sale of the property of the estate, the burden of proof lies on the distributees to show, that with proper diligence, they could have been collected.

5. *Exceptions ; practice.*—Where several objections to the rulings of the court below are grouped together, and but one exception taken, all the objections must be well taken, or the exception will not be sustained.

6. *Clause of will ; construction of.*—Where a testator directs, by his will, that his executor shall convey to some one of three named States, his slave Harriet, and her children, and bequeaths to his executor the sum of $5,000 to carry out the trust, and says, "out of said sum is to be paid all expenses which may arise in conveying Harriet and her children," &c., no allowance will be made to the executor out of the estate for this service ; and the executor to be entitled to a credit for this $5,000, must show that he has fulfilled the trust for which it was given.

7. *Executor ; extra allowance ; commissions ; attorney's fees.*—An executor will not be denied his commissions, except in cases of willful default, or gross negligence ; a reasonable compensation, in addition to his usual commissions, will be allowed him for extra services, in a proper case ; also, reasonable attorney's fees incurred about the business of the estate.

8. *Same ; Confederate treasury notes received bona fide, and funded, allowed.* Executor entitled to a credit for Confederate treasury notes received *bona fide* in collection of debts due the estate, and partly funded in Confederate 4 per cent. certificates.

APPEAL from Probate Court of Sumter county.

Benjamin Ivey died in Sumter county, in the year 1858, leaving a large real and personal estate, which he disposed of by last will and testament. By this will, among other provisions, he made it the duty of his executors to have conveyed to Indiana, Illinois or Ohio, his negro woman

Harriet, and her four children, and for this purpose, set apart the sum of $5,000. The balance of his property, after the payment of debts, he directed to be equally divided between his wife, Mary J. Ivey, and his daughter, Martha A. Ivey. This will was admitted to probate on the 18th October, 1858, and A. A. Coleman, one of the executors named in the will, qualified as executor, and took upon himself the execution of the trust. The entire property, real and personal, (with the exception of a few slaves, specially bequeathed,) were sold under the provisions of the will. The sales of the personal property amounted to $56,519 10, and of the land to $14,370. There were, besides, over $12,000 in choses in action. At the time of testator's death, a part of his cotton crop remained ungathered, and this the executor had gathered and sold, the proceeds thereof amounting to $5,992 10.

The provisions of B. Ivey's will in relation to Harriet and her children, are as follows :

"*Item* 2. It is my will, and I direct my executors, or either of them, so soon after my death as practicable, to take charge of, and convey my slave Harriet and her children, Malvina, Aleck, John, and Thomas, from the State of Alabama, to the State of Indiana, or Illinois, or Ohio, and upon reaching either of those States, to allow said slaves there to remain ; and I hereby bequeath to my executors, or either of them, who may qualify as such, the sum of $5,000, on trust, and for the uses following, to-wit : Out of the said sum is to be paid all expenses which may arise in conveying Harriet and her children to either of the aforementioned States ; the balance of said sum of money remaining, is to be properly and safely invested for the benefit and support of said Harriet and children, so that the interest annually arising therefrom may, and shall be, regularly paid over to said Harriet and her children for their support and maintenance. Upon the faithful carrying out the provisions of this item of my will, I hereby discharge my executor, or executors, from all responsibility to any person whatsoever, for the slaves and money herein mentioned."

For his better guidance and protection, the executor

filed a bill in chancery, asking that the court would construe this will, and decide upon the validity of the bequest. The executor filed his accounts for settlement, and a partial settlement was made with the probate court, on the 11th June, 1860. At this settlement his receipt of assets was set down at $99,264 58; disbursements, with some other items, including $10,000, retained to meet pending litigation, at $42,128 85; and the amount subject to distribution $57,135 73, which sum, in equal parts, was paid over to Mrs. Ivey, and her daughter Martha. This settlement of 11th June, 1860, was afterwards set aside, and held for nought, at the instance of both parties. The executor afterwards filed an amended account current, and the parties came to a final settlement before the probate court on the 13th October, 1866. With this amended account current the executor made, and submitted the following affidavit, to-wit:

"I, A. A. Coleman, executor of the estate of Benjamin Ivey, deceased, make oath, and say, that I never intended to use, and never knowingly used, any of the funds of said estate, for my own benefit, and to the best of my knowledge and belief, I never did. It is true, I have paid legacies, and made advances to the widow, and the guardian of the infant, in part of what they are entitled to, and it is also true, that I employed Messrs. Gary, Maggard & Co., a firm in Mobile, to collect a large amount of the debts due the estate, and the amount they collected is shown in their accounts with me as executor; and it further appears that I collected from them a considerable amount of interest, which they accounted for upon the money by them collected; but, to the best of my knowledge, information, and belief, I have charged myself, in my account, as stated, with all of such interest. The balance said to be in my hands, at the time of the alleged partial settlement, was not in money, in my hands, but Gary, Maggard & Co. owed me, on account of collections, the balance stated in their account, they not having paid the same to me; and in addition thereto, I held, and still hold uncollected notes of said estate, which are herewith filed, and entirely solvent.

(Signed)                              A. A. COLEMAN."

This affidavit contestants moved to reject as insufficient, and a nullity, but the court overruled their motion, and held, that the said affidavit was sufficient, and the contestants severally excepted.

In the progress of the trial, it appeared that the executor had collected from time to time, notes and drafts due to the estate through the commission house of Gary, Maggard & Co., of Mobile, and that said firm had kept an interest account with him as executor, allowing him interest on all sums collected by them in their accounts current with him. With this interest executor charged himself. The contestants moved to charge the executor with interest on the proceeds of the cotton crop of 1858, from 1st January, 1859; also, interest on certain notes due to the estate and payable to testator as returned in the inventory, which motion the court overruled, and contestants excepted.

The executor, in 1863, received from Gary, Maggard & Co., in good faith, in payment of a balance due from them to him as executor, Confederate treasury notes to the amount of $10,412. Of this sum, executor funded in September, 1863, the sum of $10,000, in Confederate 4 per cent certificates, and made due report thereof, according to law, and his action in this behalf was ratified and confirmed by the probate court. The contestants moved to charge the executor with the sum so received of G., M. & Co., and interest. The court overruled the motion, and contestants excepted.

The executor's account current contained, among others, the following credits, which were allowed, to-wit:

"By amount of note on B. B. Little, with interest, $164 75

By amount of extra compensation for carrying slaves to a free State, and carrying out the provisions of the will...................... 500 00

By amount of extra compensation for superintending and managing plantation, slaves, and other property............................ 250 00

By amount allowed for attorney's fees........... 750 00

By amount for commissions allowed executor.. 4,737 80"

An objection was made by contestants to these several items taken together, but not separately.

The probate court rendered a decree declaring
the amount of assets in the hands of the
executor to be......................... $105,225 58
Amount of disbursements.......... ....... 45,869 10

Balance subject to distribution........ $59,356 48

Of this balance, all was settled by the executor, except
the sum of $2,221 76, and for this a decree was rendered
against him.

From the decree aforesaid, the contestants appeal, and
assign the same, and the several rulings of the probate
court as aforesaid, for error.

T. R. CORNICK, and A. S. VANDEGRAFF, for appellants.
S. F. RICE, contra.

JUDGE, J.—The bill of exceptions states that, "upon
the foregoing evidences and admissions, the written vouch-
ers on file, and no other evidence, the court rendered its
final judgment."

It is contended that the "written vouchers on file,"
except those pertaining to the contested items, not being
set out in the bill of exceptions, this court can not hold
there was error in any of the rulings of the court below,
involving questions of fact, on the ground that all the evi-
dence upon which the court acted is not set out.

This, we think, would not be a reasonable construction
of the bill of exceptions. The final decree is founded, in
part, upon many items for which vouchers existed, and as
to which there was no contest. These are the "written
vouchers on file," referred to in the bill of exceptions, be-
tween which and the contested items, we can see no possi-
ble connection. We therefore hold, that the bill of excep-
tions sufficiently shows, that all the evidence upon which
the court acted, having relation to the contested items, is
set forth, and we proceed to the consideration of the
assignments of error.

An executor, or administrator, is *prima facie* liable for
interest on the funds of the estate in his hands, unless he
"*expressly* deny on oath," that he has used such funds for

his own benefit.—(Code, sec. 1813.) The affidavit of the executor, in the present case, though doubtless conscientiously made, and perhaps as explicit as it could be, under the circumstances, contains no such express denial, within the meaning of the Code, and is therefore insufficient to exonerate him from liability for interest.—(*Farmer's Distributees vs. Farmer's Administrators*, 26 Ala. 672.) And this, we think, will sufficiently appear from what follows. The evidence fully authorizes the conclusion, that the executor did not keep the funds of the estate unemployed in his hands, and unmixed with his own, and it is said to be clear law, that if a trustee mixes the trust funds with his own, they, at the election of the *cestui que trust*, are considered as his own.—(*Key vs. Boyd, Executor*, 10 Ala. 154.) They are so considered, because the mixing amounts in law to a conversion ; and the conversion necessarily includes a use of the funds ; and under section 1813 of the Code, the use thereof makes the executor or administrator liable for interest.—See *Dejarnette vs. Dejarnette*, decided at the present term, where many authorities are cited upon this question.

It results that the court erred in refusing to charge the executor with interest on the proceeds of the cotton crop for the year 1858, and on the amount of sales of the real and personal property.

As the decree must be reversed, and the cause remanded for another settlement, we deem it proper to say, that under the facts of the case as disclosed by the record, the executor is properly charged with interest upon all receipts, and should be credited with interest upon all disbursements, and this renders an examination of the other rulings of the court on the subject of interest, unnecessary.

The executor returned as uncollected, the following, among other promissory notes, viz: One on R. W. Bremer and others ; one on S. H. Chiles and others ; and one on I. James Lee and others, and was allowed a credit for the amount of each of said notes, with interest. These notes had been made payable to the executor in his representative character, and the presumption is, that they were

created in the purchase of property of the estate. *Prima facie*, the executor is chargeable with the amounts of the sale bill, and no reason is shown why he should not be charged with the amount of these notes. If they were included in the amount of the sale bill, with which he was charged, he was not entitled to a credit therefor, as allowed by the court; and not having been charged with interest thereon, it is difficult to perceive on what grounds the executor was allowed a credit for such interest.—(*Stewart's Administrators vs. Stewart's Heirs*, 31 Ala. 207.)

As to choses in action not resulting from sales of property of the estate, the rule is, that the burden of proof that they might have been collected by the exercise of proper diligence, rests upon the party seeking to charge the executor or administrator therewith.—(Code, § 1824; *Dean and Wife vs. Rathbone's Administrator*, 15 Ala. 328; *Wilkinson vs. Hunter*, 37 Ala. 268.)

What we have said upon this subject will afford a sufficient guide for the action of the court below, on a future settlement, as to all choses in action of the estate, in the hands of the executor.

The contestants excepted to the allowance of the following items, on the credit side of the account, viz: The amount of a note and interest on B. B. Little and others; the amount of extra compensation allowed the executor for carrying the slave Harriet and her children to a free State; the amount of extra compensation allowed to the executor for superintending and managing the plantation, slaves, and other property of the estate; the amount allowed the executor for attorney's fees for services rendered on the final settlement, and the amount of compensation allowed the executor as commissions.

The foregoing items are embraced in a single exception, the exception being to all of them collectively, and not to each item separately.

The rule is, that " a party asking the action of the court, must be prepared to sustain the whole demand in the precise terms in which it is made, and the refusal to act will not be error, although a portion of the request might be properly granted."—(*Carmichael vs. Brooks*, 7

Porter, 67 ; *Rives & Mather vs. McCloskey & Hagan*, 5 Stew. & Porter, 330.)

Under the operation of this rule, the court committed no error in overruling the exception, as some of the items were proper credits. But as each of these items will doubtless be questioned on another settlement, we deem it proper to give them a separate consideration.

As to what should be the proper ruling in relation to the note of B. B. Little and others, has already been stated.

The testator directed, by his will, that his slave Harriet, and her four children, should be taken charge of by his executors, and conveyed " to the State of Indiana, or Illinois, or Ohio," and be permitted there to remain.. The will then proceeds as follows : "I hereby bequeath to my executors, or either of them who may qualify as such, the sum of five thousand dollars in trust, and for the uses following, to-wit : Out of said sum. is to be paid all expenses which may arise in conveying Harriet and her children to either of the aforementioned States ; the balance of said sum of money remaining is to be safely and properly invested for the benefit and support of said Harriet and children, so that the interest annually arising therefrom may, and shall be, paid over to said Harriet and her children, for their support and maintenance. Upon the faithful carrying out of the provisions of this item of my will, I hereby discharge my executor, or executors, from all responsibility to any person whatsoever, for the slaves, or money herein mentioned."

The testator, it will be perceived, expressly required that out of the amount of said five thousand dollars, there should be paid " *all expenses* " which might be incurred in executing the above recited provisions. An allowance to the executor therefor, for this service, would be creating a charge upon the residuum of the estate, in direct conflict with the will. We hold, too, that the executor is required to show the execution of the trusts of the will, relating to Harriet and her children, before he can claim exemption from liability to account for, at least, the amount of the bequest of five thousand dollars, less the costs of the

chancery proceeding. Such is the meaning and intention of the will, and it is in harmony with the decree of the court of chancery, relative to the execution of said trusts.

We have repeatedly held that reasonable compensation will not be refused to executors and administrators, except in cases of willful default or gross negligence, by which loss to the estate has been caused.—(*Gould v. Hays*, 19 Ala. 438; *Stewart's Administrator v. Stewart's Heirs*, 31 Ala. 207; *Pearson and Wife v. Darrington*, 32 Ala. 227; *Smith v. Kennard's, Executor*, 38 Ala. 695. As was said in *Simmons v. Henderson*, 33 Ala. 291, " the law does not visit executors and administrators, who fill a fiduciary relation, which is indispensable in our judicial system, with severer intendments than are indulged against agents generally." We hold, the facts of the present case do not authorize the refusal of compensation to the executor, and that he should have a reasonable allowance for his special services, in superintending the slaves, plantation, and the gathering of the crop, during the interval between the testator's death and the sale, and should be allowed, also, his regular commissions.

As to the rules which should govern in fixing the amount of the allowance for special or extraordinary services, see *Gould v. Hays*, 25 Ala. 426.

A reasonable allowance for attorney's fees, for services in aid of the executor on the final settlement, would also be proper.—(*Pickens v. Pickens*, 35 Ala. 442, and cases there cited.)

As to the Confederate States treasury notes funded, the previous adjudications of this court have settled the question, that upon the evidence as set forth in the bill of exceptions, the executor is entitled to a credit for the amount of the Confederate States treasury notes funded by him, and also for such amount of notes of the same character as may have been received by him in good faith, in the collection of debts due to the estate.—(*Watson and Wife v. Stone*, at the January term, 1867, and subsequent cases.)

As to the proof required of items on the credit side of the account, see the following authorities: Code, §§ 1809,

1810; *Pearson and Wife v. Durrington*, 32 Ala. 227; *Henderson v. Simmons*, 33 Ala. 291.

The conclusions herein expressed render it unnecessary to examine any of the other assignments of error.

Decree reversed and cause remanded.